## THE STATE ex rel. AMERICAN FIRE INSURANCE COMPANY v. JAMES ELLISON et al., Judges.

### In Banc, December 21, 1916.

1. **INSURANCE CONTRACT: Reasons for Forfeiture Clause.** Actions to recover upon contracts of insurance in case of loss by fire are ordinarily cases at law; and absent some phase of equitable jurisdiction, antecedent reasons for inserting a forfeiture clause avoiding the policy in case of a mortgage or foreclosure sale cannot aid the court in construing a contract otherwise free from ambiguity.

2. ———: ———: **Increase of Hazard.** If the insurance contract does not make increase of hazard the condition for forfeiting the policy in case the property is mortgaged or the mortgage foreclosed, the courts cannot write into it a condition that the forfeiture clause is to be valid only when the hazard is increased by the mortgage or foreclosure.

3. ———: **Construction.** Unambiguous contracts of insurance made by persons competent to contract, free from overreaching and other elements of fraud, are to be construed by the same law by which other contracts are construed. [Holding that the Court of Appeals erred in holding Springfield Steam Laundry Co. v. Traders' Insurance Co., 151 Mo. 90, announced a different rule.]

4. ———: ———: **Proof.** If there is any warrant in law for construing an insurance contract by any other rule than that used to construe other contracts made by persons competent to enter into them, the difference must rest in the quantum of proof necessary to prove an allegation of waiver, fraud, misrepresentation, mutual mistake or overreaching.

*Certiorari.*

JUDGMENT QUASHED.

*Fyke & Snider* for relator.

If the rule in Springfield Steam Laundry Co. v. Insurance Co., 151 Mo. 90, is applicable to this case the Court of Appeals has refused to follow that rule. That court says it is not applicable. The reason for the distinction is that this court sustained the contract condition on the ground the company might have been willing for the premium charged to insure mortgaged property but not to continue the insurance if the risk was enhanced by proceedings to foreclose the mortgage. Such is not the reason given by this court for the finding, but it is given as the probable reason why the contracting parties used the provision in the policy. The reason given by this court for the finding is, that the provision being in the contract, it must be enforced as made. "If the parties make such contracts they have no right to expect courts to disregard the law in construing them," and "the court has no power in the absence of fraud or mistake to relieve from the obligation of contracts." The Court of Appeals has disregarded the rule of this court in construing this policy for these reasons.

*Lathrop, Morrow, Fox & Moore, Charles M. Howell* and *Joseph S. Brooks* for respondents.

(1) The clause avoiding the policy, "If with knowledge of the insured foreclosure proceedings be commenced . . . by virtue of any mortgage, or deed of trust," is upheld by the courts only on the ground that such proceedings, or the giving of such notice, tend to increase the moral risk. Laundry v. Insurance Co., 151 Mo. 90; Titus v. Insurance Co., 81 N. Y. 410; Algase Co. v. Corporation of Royal Exchange Assurance, 122 Pac. (Wash.) 986; Kelly Co. v. Ins. Co., 47 So. (Fla.) 742; Medley v. Insurance Co., 47 S. E. (W. Va.) 101; Findlay v. Ins. Co., 52 Atl. (Vt.) 429; 2 Cooley, Briefs on Insurance, 1736 et seq.; Trabue v. Insurance Co., 121 Mo. 75. (2) Under the undisputed facts in this case there was and could be no increase in the

moral risk because of the publication of notice of sale, and the insurance will not be forfeited for a mere technical violation of the policy. Cone v. Insurance Co., 117 N. W. (Iowa) 307; Insurance Co. v. Gibe, 44 N. E. (Ill.) 490; Kyte v. Assurance Co., 10 N. E. (Mass.) 518; Schloss v. Ins. Co., 37 'So. (Ala.) 701; Forward v. Insurance Co., 37 N. E. (N. Y.) 615; Weigen v. Insurance Co., 73 N. W. (Iowa) 862.

FARIS, J.—This is an original proceeding by certiorari, whereby it is sought to quash the judgment heretofore rendered by the Kansas City Court of Appeals in the case of Terminal Ice & Power Company, appellant, v. American Fire Insurance Company, respondent, 187 S. W. 564, on the ground that the opinion therein is contrary to the opinion of this court in the case of Springfield Steam Laundry Co. v. Traders' Insurance Co., 151 Mo. 90.

For convenience and brevity in designating the parties to that action and the parties to this one, we shall refer to the Terminal Ice & Power Company as "plaintiff," to The American Fire Insurance Company as "defendant," and to the parties in the instant case as "relator" and "respondents," respectively.

The original action (the judgment wherein relator by this proceeding seeks to quash), was brought by plaintiff upon a policy of insurance issued by defendant, who is the relator herein. This policy of insurance provided, among other things not here pertinent, as follows:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if . . . with the knowledge of the insured foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy by virtue of any mortgage, or trust deed, or if any change other than by the death of the insured take place in the interest, title or possession of the subject of insurance whether by legal process or judgment, or voluntary act of the insured."

Other facts in the case extrinsic to the clause above quoted from the policy of insurance, and which were considered by the learned Kansas City Court of Appeals as warranting the views held and the judgment entered by them, are thus clearly and succinctly stated by that learned court:

"The property insured was a part of a manufactory owned by W. F. Lyons, who in 1908 transferred it to a corporation known as the W. F. Lyons Ice & Power Company, of which he was the principal stockholder and moving spirit. The corporation began its business career (which was short-lived and disastrous) by issuing and selling bonds for $100,000, which it secured by a first mortgage on all its property. Afterwards on November 5, 1909, it further encumbered the property with a second mortgage or trust deed executed and delivered to John H. Lynds, trustee, to secure notes for $20,000 for money borrowed for the use of the company. These notes were owned by Howard Vanderslice, J. S. Chick, John H. Lynds and Fred Wolferman, and in December, 1909, the control of the corporation and its property and affairs was surrendered to these four holders of the second mortgage notes, whose number was reduced to three by the withdrawal of Wolferman, who sold his interest to the others. In 1910, suit was brought to foreclose the first mortgage and that suit was pending when the policy in question was issued. To protect their interests as second mortgages, Vanderslice, Chick and Lynds bought and became the owners of a large part of the bonded indebtedness and thereby obtained control of the foreclosure suit. They also became the owners of all of the capital stock of the W. F. Lyons Ice & Power Company, and Lyons retired from the corporation and its affairs. At that time the corporation was on the verge of bankruptcy, had lost its credit and had a bad reputation in the business world. Vanderslice, Chick and Lynds, in an obvious effort to ward off the attacks of creditors as well as to escape other consequences of such bad reputation, had the name of the corporation changed

to the Terminal Ice & Power Company, early in 1911, and incorporated another company under the name of the Sheffield Ice Company, which operated the factory under a lease from the Terminal Company for a term of two years. Both of these companies were controlled by Vanderslice, Chick and Lynds, who owned all the stock of both, the stock of the Sheffield Company being paid by the transfer to that company of the second mortgage notes . . .

"On April 2, 1913, while the factory was being operated by the Sheffield Company, plaintiff gave a written option to another corporation, the City Ice Company, to purchase the plant, and in February, 1913, executed a lease to the City Ice Company under which that company as lessee took possession of the property about June 1, 1913, and proceeded to operate the factory. The fire occurred June 17th, and on June 30th, the City Ice Company formally notified plaintiff in writing of its decision to exercise the option and afterwards the sale was consummated.

"At about the time the City Ice Company took charge of the plant under the lease and shortly before the fire, Vanderslice, Chick and Lynds, acting in the name of the Sheffield Company, the bookholder of the second mortgage notes which then amounted to about $30,000, had the trustee in the deed of trust securing the notes, advertise the plant for sale under the terms of that trust deed.

"This sale was made about two weeks after the fire, and the property was sold to Vanderslice, who bid $2,000, and a trustee's deed was executed and delivered to him by Lynds, the trustee. The attorney for Vanderslice, Chick and Lynds testified that the advertisement and sale of the property under the second trust deed was pursuant to the request of all the parties in interest, viz., his clients and the City Ice Company, who desired 'this title straightened out.' We understand him to mean that the purpose of the sale was to secure the plant against the attacks of the general creditors of the old Lyons company in order that the prop-

erty might be sold and conveyed, clear of all incumbrances, to the City Ice Company.''

The policy of insurance on which the action was instituted out of which this proceeding grew, was issued on September 20, 1912. The fire which destroyed the property occurred on the 17th day of June, 1913. Under these facts it is plain that neither the antecedent nor the subsequent acts of the owners of the property, nor the facts touching the title thereto, can be of any help in the case, except upon the theory that we are to read into the insurance contract between the parties a provision that the clause therein against a foreclosure, or a sale, or advertisement for sale, under a deed of trust, shall render the policy void, only when a violation of it shall actually serve in the opinion of the trial court or jury, to increase the hazard. For clearly the sole reason for the offering of proof of these facts was to show that the hazard was not in fact increased.

The facts of the case and the condition of the ownership at and after the making of the contract of insurance (till the fire happened), run thus: The plaintiff in the suit below owned the insured property. On this property there was a first deed of trust to secure bonds in the sum of $100,000. Vanderslice, Chick and Lynds owned ''a large part of the bonded indebtedness'' above-mentioned. There was also on the property of plaintiff, Terminal Ice & Power Company, a second mortgage (the one now here vexing us) securing notes amounting, principal and interest, to $30,000. These notes formerly held by Vanderslice, Chick and Lynds, had been by them transferred to the said Sheffield Ice & Power Company in payment, as stated, of their stock in the latter company, and were at the time of the fire owned by this company. From (and probably before, but that does not here concern us) the time the property was insured on the 20th day of September, 1912, till the first day of June, 1913, the Sheffield Ice & Power Company, the holder of the second mortgage, was in possession, operating the property under a lease. But on the last-mentioned date the City Ice Company went

into possession under a lease of the property and was operating it when the fire happened. In February, 1913, said City Ice Company took an option to purchase this property, and after the fire and the foreclosure sale did so purchase it. The Sheffield Ice & Power Company, in order to "straighten the title out," began proceedings to foreclose the second mortgage and sell the property, and while these proceedings for sale were going forward, but prior to the sale, the part of the property here in controversy burned.

The learned Court of Appeals finds that this "straightening out of the title" was for the purpose of effectually putting it out of the power of creditors of Lyons and of the W. F. Lyons Ice & Power Company, to harass the proposed new purchasers by efforts to collect their claims against the last-named person and corporation, out of the property sold. But it also finds that while the concern's secured debts were $120,000, the entire property was worth only $110,000, so that there was in fact no equity out of which the unsecured creditors could be paid. From this and other facts which they state and we quote, it is argued that no increase in hazard occurred and that no forfeiture therefor should be adjudged.

It is urged that such a holding is directly contrary to our opinion in the case of Springfield Steam Laundry Co. v. Traders' Insurance Co., 151 Mo. 90, which question is therefore the only point up for our ruling here.

The learned Court of Appeals in their able and exhaustive opinion discuss the Springfield Laundry case and find themselves able to distinguish it from the facts in the case upon which the instant proceeding is bottomed. Upon this point and upon the manner in which the case is thus sought to be distinguished, the Court of Appeals said:

"The last defense we shall consider is that predicated on an alleged violation of the provision that the policy shall be void 'if with the knowledge of the insured foreclosure proceedings be commenced, or notice given of the sale of any property covered by this

policy by virtue of any mortgage, or trust deed.' The validity of such a stipulation was sustained by the Supreme Court in Springfield S. L. Co. v. Ins. Co., 151 Mo. 90, on the ground that the defendant might have been willing for the premium charged to insure mortgaged property, but not to continue the insurance if the risk were enhanced by proceedings to foreclose the mortgage, and that the parties had the right to contract against the assumption by the insurer of the greater risk."

In the Springfield Laundry case the facts are stated by us thus:

"The facts agreed upon are substantially as follows: The property was owned by the Springfield Steam Laundry Company. The insurance was taken out by it, and by the terms of the policy the loss, in case of the destruction of the  ·  ·operty, was to be paid to the mortgagee as his interest might appear. After the loss the claim was assigned by the mortgagee to the plaintiff Heffernan. The mortgage by its terms was subject to foreclosure if the taxes on the mortgaged property were permitted to become delinquent. This condition of the mortgage was broken, and by reason of it the trustee advertised the property for sale as provided by the terms of the mortgage. The sale was enjoined. Subsequently the taxes were paid and the injunction proceedings dismissed. A short time thereafter the fire occurred. The policy contained this provision, to-wit: 'If the property be sold, transferred, or is or becomes incumbered by mortgage or trust deed, or by judgment, tax or mechanics' lien, *or upon the commencement of proceedings for its foreclosure or sale*, or levy thereon by a law officer, or upon its passing into the hands of a receiver or trustee, or if this policy be assigned before a loss, then, and in every such case, this policy shall, without the written consent of this company thereto be indorsed hereon, *become absolutely void.*'"

Stating the precise point up for judgment therein, we said in the Springfield Laundry case this:

269 Mo.—27

"The first question for consideration is as to whether or not the advertisement of the property for sale under the deed of trust was the commencement of foreclosure proceedings within the meaning of the terms of the policy; if so, by one of its express provisions the policy became void and of no effect."

Passing upon this point we said in that case: "While we are fully satisfied that the rule announced in that case (Ins. Co. v. Lewis, 30 Mich. 41) as we understand it, and which is applicable to this, that is, that the advertisement of the property for sale under the mortgage was a commencement of proceedings for its foreclosure, or sale of the mortgaged property within the meaning of the policy, was a breach of its conditions and rendered it invalid unless the breach was waived, yet when the facts that the amount of taxes due upon the property was so small as compared with its value, that the sale was enjoined and the taxes paid, and the proceedings to sell finally abandoned, are considered, we should not be inclined to hold the policy forfeited, because it would be most unreasonable and unjust to do so, if it were not for the fact that it was expressly provided in the policy that it should become absolutely void upon the commencement of proceedings for the foreclosure of the mortgage. The proceedings were commenced in consequence of the failure of the assured to pay the taxes on the property according to the terms of the agreement, and this court has no power in the absence of fraud or mistake to relieve plaintiff from the obligations of its contract. If parties will make such contracts they have no right to expect courts to disregard the law in construing them. Such provisions are not, however, infrequent."

This ruling is in strict accord with the rule in practically all other jurisdictions. [Findlay v. Union Mutual Fire Ins. Co., 74 Vt. 211; Norris v. Hartford Fire Ins. Co., 55 S. C. 450; Schroeder v. Imperial Ins. Co., 132 Cal. 18; Horton v. Home Fire Ins. Co., 122 N. C. 498; Hanover Fire Ins. Co. v. Brown, 77 Md. 64; Titus v. Glens Falls Ins. Co., 81 N. Y. 410; Delaware Ins. Co.

v. Greer, 120 Fed. 916; Hartford Ins. Co. v. Clayton, 17 Tex. Civ. App. 644; Gibson Electric Co. v. Ins. Co., 159 N. Y. 418; McKinney v. Western Assur. Co., 97 Ky. 474; Meadows v. Hawkeye Ins. Co., 62 Iowa, 387; McIntire v. Ins. Co., 102 Mass. 230; German Ins. Co. v. Russell, 65 Kan. 373; Girard Ins. Co. v. Hebard, 95 Pa. St. 45; Algase Co. v. Royal Exchange Assur. Co., 122 Pac. (Wash.) 986; Medley v. German Alliance Ins. Co., 47 S. E. (W. Va.) 101; Kelly Co. v. St. Paul Ins. Co., 56 Fla. 456; Woodward v. German-American Ins. Co., 128 Wis. 1.]

Some of the courts, *arguendo* we must assume, in upholding the validity of a clause like that here under review, discuss the reasons which move the insurer to insert such a clause in an insurance policy. [Titus v. Glens Falls Ins. Co., 81 N. Y. 410.] But actions to recover upon a contract of insurance in case of loss are ordinarily cases at law, and do not sound in equity, at any rate that was the kind of case now here engaging our attention; so absent some phase of equitable jurisdiction, it is clear that antecedent reasons for making a contract cannot aid us in construing such contract when it is clear and free from ambiguity.

The forfeiture clause here in question is part of a solemn contract made between corporations, both of which are competent to make contracts; there is no phase of equitable jurisdiction involved or invoked. We are here merely to say what that clause means; not to write into it terms or conditions which it does not contain; for we may assume, since the parties to this contract were *sui juris,* since they were not over reached, since neither fraud, nor mistake, nor misrepresentation had aught to do with the making of this contract in the terms in which it was made, that had it been intended to make the actual increase of the hazard assumed a part of the contract, and a condition precedent to the forfeiture, they would have said so. We seek in vain for any such reason in the language of the clause in question. It is undisputed that the property destroyed was being advertised for sale under a deed of trust

when the fire occurred and that the remainder of the property was so sold pursuant to such advertisement shortly after the fire. So the facts are undisputed; the clause under construction is clear and unambiguous. But the learned Court of Appeals considered that a quotation in the Springfield Laundry case by this court from the case of Titus v. Glens Falls Ins. Co., supra, wherein the New York Court of Appeals *arguendo* suggested the probable *reasons moving the insurer to write such forfeiture clause into a contract of insurance,* was the adoption by this court of the argumentative matter in that quotation as the basis of the rule of law, *instead of that which it was, to-wit, a mere reason for the making of the contract* by the parties contracting.

We cannot so construe our ruling. For this court just prior to the adoption of the quotation from the Titus case, said: "If parties will make such contracts they have no right to expect courts to disregard the law in construing them. Such provisions are not, however, infrequent." Illustrating this fact of frequency largely, the Titus case is cited and quoted from. This state of the facts might well have misled our learned brethren of the Court of Appeals in holding, as they did, that the enforcement of such a clause by courts depends wholly on the question whether the violation of it increases the hazard or decreases it; and so having found that under the facts presented the risk assumed was minimized rather than maximized, the forfeiture ought not to be enforced.

We do not think (aside from the several phases of equitable jurisdiction and of waiver and of construing a contract more strictly against the writer of it, and of the rule that a forfeiture is abhorrent, none of which is involved herein by reason of the absence of doubt as to the facts and of the lack of ambiguity in the clause before us for construction) there is any warrant in law to construe a contract of insurance by any other rule than that used to construe other contracts made by persons competent to enter into them. If there be any difference it rests, or ought to rest, merely in the rule

as to the quantum of the evidence which we will require to prove an allegation of waiver, or fraud, or misrepresentation, or mutual mistake, growing out of an insurance contract, and which is bottomed upon a consideration of the advantage, which for the most part the insurer has over the assured, in pitting technically trained mentalities against untrained minds. Nor do we think we'so held in the Springfield Laundry case, but on the contrary we therein emphasized the rule that in construing a contract of insurance made by persons competent to contract, this court must follow the law by which contracts are construed.

For failure to follow the rule laid down by us in the case of Springfield Steam Laundry Co. v. Traders' Ins. Co., 151 Mo. 90, the judgment of the Kansas City Court of Appeals, reversing the case of Terminal Ice & Power Co., appellant, v. American Fire Insurance Company, respondent, is quashed and for naught held, and the record therein remanded to that court for further proceedings not inconsistent with this opinion. Let this be done. All concur except *Bond, J.*, who dissents.