THE STATE ex rel. WESTERN AUTOMOBILE INSURANCE COMPANY v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

In Banc, April 2, 1923.

1. **CERTIORARI: Decision of Court of Appeals: Evidence Drawn in by Reference.** Provisions of the insurance policy sued on and by-laws of the company, quoted in the opinion of the Court of Appeals, are drawn into the opinion by reference, and are for consideration upon *certiorari* to that court as fully as they would be had they been written into the opinion in full.

2. **INSURANCE: Indemnity for Judgments Paid: To Be Actually Paid in Money.** Where the automobile insurance policy provided that "there shall be paid to the member such sums of moneys as are guaranteed to said member by the by-laws of this association, by

reason of any claim made upon said member on account of bodily injuries suffered by any person through the use of the automobile described in the application," and one by-law provided that "all payments, or liability to pay, shall be subject to each and all of the provisions of the by-laws," and another that the "object of this association is to maintain a mutual association for the purpose of indemnifying and protecting its members from claims for loss or damage to persons arising from the ownership and use of an automobile," and another that "each member will be indemnified for any sums paid by such member in satisfaction of any judgment imposed by law upon such member on account of bodily injuries suffered by any person through the ownership or use of the automobile," and another that "in no event does liability accrue against this association in favor of a member until payment, within the terms of his membership, has actually been made by said member," all said by-laws, being introductory, pointed unerringly towards another which provided that "no action shall lie against this association to recover.for any indemnity guaranteed by this certificate, until final judgment has been rendered against the member after an actual trial on the merits, and then only provide such action be brought for loss or expense actually paid in money by said member in satisfaction of such final judgment;" and where the member was sued by and judgment was rendered in favor of two other persons who were riding in the automobile described in the application, said member cannot recover from the association the amounts of said judgments against him until they are actually paid in money, a payment by notes secured by deed of trust on land, in consequence of which the judgments were satisfied, not being in compliance with the terms of the by-law, which are unambiguous and too plain for construction.

*Held*, by WALKER, J., dissenting, with whom WOODSON, C. J., concurs, that the by-law expressly declared that the purpose of the association was the "indemnifying and protecting its members against claims for loss and damage to others arising from the ownership and use of an automobile" and the association solemnly promised that members "will be indemnified for sums paid by them in satisfaction of judgments imposed by law on account of bodily injuries suffered by any person" through such use or ownership, and to construe the contract to mean that no liability on the part of the company arises until a judgment recovered against the member is "actually paid in money" is a narrow and strained construction, but the words "paid in money" should be construed to mean such a payment or satisfaction of the judgment as will release the member from its burden and afford proof of that fact to the company; that any other construction would be to "stick in the bark,"

and would violate the salutary rule, often announced by this court, that the terms of an insurance policy, made for the protection and indemnification of the insured and framed by the company itself, should be strictly construed against the company when they tend to limit or avoid the main obligation to protect and indemnify.

Certified from Kansas City Court of Appeals.

RECORD QUASHED.

*M. D. Aber* for relator.

(1) "We do not think there is any warrant in law to construe a contract of insurance by any other rule than that used to construe other contracts made by persons competent to enter into them." State ex rel. v. Ellison, 269 Mo. 410, 420. To same effect: Renshaw v. Ins. Co., 103 Mo. 604; Lovelace v. Ins. Co., 126 Mo. 111; Springfield &c. Co. v. Ins. Co., 151 Mo. 90; Const. Co. v. St. Louis, 256 Mo. 332, 339; Imperial Fire Ins. Co. v. Coos, 151 U. S. 463. (2) And the rule for construing other contracts is that words used must be taken in their plain, ordinary, everyday meaning, as used and understood by the community at large. Pavey & Orr v. Burch, 3 Mo. 447; Caldwell v. Layton, 44 Mo. 220; Cochran v. Stewart, 63 Mo. 424; Callaway v. Henderson, 130 Mo. 86; Donovan v. Boeck, 217 Mo. 70, 87; St. Louis v. Railroad, 228 Mo. 712, 736; Liggett v. Bank, 233 Mo. 590, 601; Mecartney v. Trust Co., 274 Mo. 224, 238. (3) And the word "money" in its usual meaning, signifies gold, silver or paper money used as a circulating medium of exchange, and does not include notes, bonds, evidences of debt or other property. Pullman v. Pullman, 150 S. W. (Ky.) 829. And this is the definition given by all the lexicographers. (4) The language in Mathews v. Modern Woodmen, 236 Mo. 326, 342-3, is all *obiter*, used merely as *dicta*, and no part of the decision, upon very different facts, and is not authority, and not the last controlling decision of this court upon the subject and not so intended. In rendering the decision, it never entered the mind of the judge writing the opinion or of those concur-

ring that the rule of construction stated above should be abrogated, or the prior cases cited be overruled. The effect of such remarks in a decision are shown by the particular construction given it in the following cases by LAMM, J., who wrote the Mathews case, State ex rel. v. St. Louis, 241 Mo. 238; Greene Co. v. Lydy, 263 Mo. 91; Skillman v. Clardy, 256 Mo. 322; Pocoke v. Peterson, 256 Mo. 518; Bender v. Weber, 250 Mo. 561; Lorenzen v. Railroad, 249 Mo. 191. These decisions, all of this court, recognized two fixed principles determinative of the correct use of a judicial decision as a precedent when considered by a court. Under these the court must know (a) what the question is which is then before it for determination, and (b) what was in fact determined by the decision invoked as a predecent. Black on Judicial Precedents, sec. 11, p. 49; State ex rel v. Becker, 235 S. W. 1028. Moreover, absent ambiguities, as here, even if the quoted language of the Mathews case were not *obiter*, it is wholly inconsistent with the decision of this court in banc in the long-subsequent case of State ex rel. v. Ellison, 269 Mo. 410, 420. (5) It has been the practical construction by the learned bar of this State in the past that when the indemnity contract provided, as in this case, that a judgment must be paid in money, that method was followed. Hoagland Wagon Co. v. London Guarantee & Accident Co., 201 Mo. App. 490; Mears Mining Co. v. Maryland Casualty Co., 162 Mo. App. 178; Brinkman v. Western Auto Ins. Co., 205 Mo. App. 71. And numerous cases outside the state indicate the same understanding of the law, a type of which is Glatz v. Kroeger Bros., 183 N. W. (Wis.) 684. (6) It is only where the contract is such as to make the liability absolute and not a mere contract of indemnity which by its terms is made to depend upon "an actual trial of the issues on the merits" that the judgment rendered binds the indemnitor. Strong v. Ins. Co., 62 Mo. 289, 295; Gantt v. Ins. Co., 68 Mo. 503, 539; Garrison v. Transfer Co., 94 Mo. 130, 137; Railroad v. News Co., 151 Mo. 373, 390.

*Nick M. Bradley* and *W. E. Suddath* for respondents.

(1)   It is not the province of the Supreme Court to determine whether the Court of Appeals erred in its application of the rules of law to the facts stated in its opinion, but only whether upon these facts it announced some conclusion of law contrary to the last previous ruling of this court upon the same or a similar state of facts. State ex rel. v. Allen, 243 S. W. 841.   (2)   When the language of the policy is open to two constructions the one most favorable to the insured will be adopted, as the language is that of the insurer.   Drucker v. Western Indemn. Co., 223 S. W. 991; Mathews v. M. W. A., 236 Mo. 326, 342; Paper Co. v. Fidelity Co., 104 Mo. App. 167; Grocer Co. v. Fidelity Co., 30 Mo. App. 428; Banta v. Casualty Co., 134 Mo. App. 226; Walton v. Ins. Co., 162 Mo. App. 216, 329; Brittenham v. W. O. W., 180 Mo. App. 523, 533; Brown v. Ins. Co., 197 Mo. App. 327; Hartman v. C. B. & Q., 192 Mo. App. 217, 277.   And should be construed strictly against the company where they tend to narrow the range and limit the principal obligation.   Renn v. Sup. Lodge K. P., 83 Mo. App. 447; Foglesong v. M. W. A., 121 Mo. App. 553; Dezell v. Fidelity Co., 176 Mo. 265; Batten v. M. W. A., 131 Mo. App. 384; Mathews v. M. W. A., 236 Mo. 326, 342; Brittenham v. W. O. W., 180 Mo. App. 523, 533; Brown v. Ins. Co., 197 Mo. App. 327; Hartman v. C. B. & Q., 192 Mo. App. 277.   (3)   Money in its popular sense is employed as synonymous with property; anything having a conventional use as a medium of exchange or a measure of value, or a measure of value alone.   Webster's Int. Dictionary, "Money"; 27 Cyc. 820; Randall v. Rich, 11 Mass. 498; In re Miller, 48 Cal. 165; Skinner v. Moore, 19 N. C. 138; State v. McFetridge, 84 Wis. 473; In re Blackstone, 95 N. Y. Supp. 980.   (4)   Payment by note, if so accepted, is an absolute payment and a complete discharge of obligation.   Commisky v. McPike, 20 Mo. App. 82; Shotwell v. Moore, 42 Mo. App. 669; Montgomery Co. v. Auchley, 103 Mo. 492, 502.   (5)   Judg-

ment of the court was final, clear and concise, showed clearly all issues and matter adjudicated and was not subject to be varied by parol. State ex rel. v. Orahood, 27 Mo. App. 496; State to use v. Stinebrake, 90 Mo. App. 280; Ruoff v. Fitzgerald, 128 Mo. App. 639; Cook v. Penrod, 111 Mo. App. 128, 136; State ex rel. v. Miles, 149 Mo. App. 638. (6) Where one is bound to protect another from liability he is bound by the result of the litigation to which such other party is a party. Murch Bros. v. Cas. Co., 190 Mo. App. 490, 516; Strong v. Ins. Co., 62 Mo. 295; Railroad v. News Co., 151 Mo. 373, 390.

JAMES T. BLAIR, J.—*Certiorari.* The writ brings here the record of the Kansas City Court of Appeals in Ben Pickel v. Western Automobile Insurance Company. The question presented is whether the decision of the Court of Appeals conflicts with previous controlling decisions of this court respecting the construction of contracts of insurance.

It appears from the opinion of the Court of Appeals that the action before it is upon a contract of indemnity insurance issued to plaintiff by defendant, relator here. While driving the automobile covered by the policy Pickel collided with another automobile and injured Hanna and Walker. Pickel notified relator and it later declined to "assume any liability in the case." Walker and Hanna sued Pickel, and recovered judgment. Relator continued to deny liability and did not appear. The judgment for Walker was for $600, and $93.40 costs. Hanna's judgment was for $500, and $10.35 costs. The costs Pickel paid in cash. Attorneys' fees in the sum of $300 "plaintiff paid by giving his unsecured promissory note" the Court of Appeals states. "In payment and satisfaction of the two judgments plaintiff gave to each of the respective holders thereof his promissory note for the amount of the judgment, which note was duly secured by deed of trust on land belonging to plaintiff, whereupon the two judgments were released upon the margin of the records thereof." Pickel then sued

relator upon the indemnity policy to recover the amounts
of the judgments and expenses of litigation. There was
a judgment for Pickel for the full amount. The com-
pany appealed.

The Court of Appeals held that the defense under
the policy that Pickel was intoxicated when the collision
occurred had been settled by the verdict rendered on con-
flicting evidence. The principal question in the Court of
Appeals and the one the decision upon which is contended
to have conflicted controlling decisions of this Court,
grew out of the refusal of the trial court to give an in-
struction in the nature of a demurrer to Pickel's evi-
dence. The company, the opinion states, contended in
the Court of Appeals "that the policy is not one of.in-
demnity for liability." The Court of Appeals held this
was the correct construction of the policy. Of this hold-
ing relator does not complain. The Court of Appeals
then took up the question whether the course pursued by
Pickel gave him a right of action on the policy for "loss
resulting from liability.' It sustained Pickel's right to
sue. This is the particular ruling said to be out of har-
mony with decisions of this court. In deciding this the
Court of Appeals referred to and quoted freely from the
policy and the by-laws of relator and founded its ruling
upon their construction. Under the decisions (State ex
rel. Kansas City v. Ellison, 281 Mo. 1. c. 674.et seq. and
cases cited; State ex rel. Raleigh Inv. Co. v. Allen, 242
S. W. 1. c. 78; State ex rel. Natl. Council v. Trimble, 239
S. W. 1. c. 468), the contract and by-laws are thereby
drawn into the opinion by reference and are for con-
sideration in this proceeding as if they had been written
into it in full. The Court of Appeals quotes nearly or
quite all the pertinent provisions of the policy and by-
laws and construes them to give a cause of action to
Pickel, both for the amount of the judgments, the costs
and attorneys' fees. No question is made concerning the
costs, which were paid by Pickel in cash. In discussing
the question which remains, i. e. whether Pickel had a
cause of action against relator for anything except the

actual cash he had paid out, the several provisions of the policy and by-laws relevant to that question will be considered in the order in which they appear.

The principles applied by the Court of Appeals are that when an insurance "policy is open to two constructions, the one most favorable to the insured will be adopted, as the language is that of the insurer; and conditions which narrow the range and limit the force of the principal obligation, or tend to defeat it altogether, should be construed against the company where there is room for contention. [Mathews v. Modern Woodmen, 236 Mo. 326, 342-3.]" The position of relator is that the language of the policy and by-laws is unambiguous and susceptible of but one construction; that in such case the rules adverted to by the Court of Appeals cannot be employed to give the contract a meaning its language does not warrant; that the Court of Appeals did give it such a meaning and thereby brought its decision into conflict with the principle of the decision of this court in State ex rel. v. Ellison, 269 Mo. 1. c. 420, and other decisions cited.

As stated by the Court of Appeals, "the insurance contract is made up of the policy and . . . the by-laws." The part of the policy which is pertinent to the present question is: "In consideration of the application . . . and admission fee paid, the . . . association does hereby receive the said Ben Pickel . . . as a member . . . and upon the consideration aforesaid and upon the further consideration and condition of the payment of all assessments . . . within the time provided for . . . there shall be payable to said member . . . such sums of money *as are guaranteed to said member by the by-laws* of this association, by reason of any claim or demand made upon said member on account of bodily injuries or death, suffered or alleged to have been suffered, by any person or persons, through the ownership, maintenance or use of the automobile enumerated and described in the member's application." The policy also provides for losses resulting from dam-

age to property. It limits liability for loss for causing death of any one person to $2500, and fixes $5000 as the maximum liability for "any one accident." Liability for loss by reason of damage to property in any one accident is limited to $500. Following this the following appears in the policy: "And any and all of such payments, or liability to pay, shall be and are, in accordance with and subject to each and all of the provisions of the by-laws of said association, . . . which said by-laws are hereby referred to and made a part hereof as fully as if they were recited at length over the signatures hereto affixed, . . . and the said Ben Pickel hereby and by the acceptance hereof, agrees to abide, and be bound, by said by-laws, and each of them." Sections 1 and 2 of Article I of the by-laws state the name and place of business of relator. Section 3 of Article I is to the effect that the "object of this association is to perfect and maintain a mutual association for the purpose of indemnifying and protecting its members against claims for loss and damage to persons and property of others arising from the ownership, use and maintenance of an automobile." These three sections appear under an article title—"Name, Location, Object." In Article VI of the by-laws are found the same provisions as to what constitutes the contract of indemnity, and as to the limitation upon liability, as appear in the policy or certificate. Article VIII of the by-laws is entitled "Indemnities or Benefits." Section 1 of that article of the by-laws provides that "each member of this association will be indemnified for any sums paid by such member in satisfaction of any judgment imposed by law upon such member on account of bodily injuries or death suffered, or alleged to have been suffered, by any person or persons through the ownership, maintenance or use of the automobile enumerated," etc. Section 2 of Article VIII contains like provisions respecting damages to property. The section immediately following these two reads thus: "Provided, that in no event does liability accrue against this association in favor of a member until payment or

payments *within the terms of his membership have actually been* made by said member.'' Several other short sections follow which deal with the matter of indemnity, notice of suit and duties of certificate-holder. Section 14, the last section in Article VIII, reads as follows:

''Unless otherwise provided by law of the State within which this certificate is issued, no action shall lie against this association to recover for any indemnity or benefit guaranteed by this certificate, until final judgment has been rendered against the member after an actual trial of the issues on the merits, in a suit duly instituted within the period limited by the Statute of Limitations; and then only, provided such action against this association be brought by the member personally, *for loss or expense actually paid in money by said member* in satisfaction of such final judgment.''

In holding that the settlement of the judgments by giving notes secured by deeds of trust constituted a payment within the contract and entitled Pickel to sue, the Court of Appeals said that if Pickel had ''paid and satisfied the said judgments and thereby sustained such loss, it would seem that it should little concern defendant how or in what way it was paid, whether in cash or in property. However, it may be that defendants are entitled to require that payment be made in a particular manner. But before it should be exempted from liability under the policy on that ground, it should clearly and explicitly appear that such is the strict requirement specified in the insurance contract, and that no other meaning is possible.'' The court refers to the principles and decision already mentioned, and then says: ''Now, in its widest and popular sense, the term 'money' is frequently employed as synonymous with property. [Citing cases.] 'The term money can be used in a restricted and also an enlarged sense. In one it is a standard of value or medium of exchange stamped by government authority; and in the other, in addition to this, it includes stocks, bonds and other personal securities.' '' It is then stated that the notes Pickel gave were solvent,

were accepted as payment and, therefore, discharged the judgments. The court adds: "We think the clause relied upon by defendant to defeat the insurance herein— the very object and the only object of the insurance contract—can be interpreted to require merely that insured should pay and discharge the judgments, in which case defendant would reimburse him for the loss sustained."

It is quite clear that there is nothing in the policy or certificate which, in itself, purports to inform the member what he may recover from the association in case of loss. The language therein used specifically informs the member that he must look to the by-laws in order to discover what is "guaranteed to said member." The by-laws are expressly made a part of the contract. With respect to these things there is neither ambiguity in the language, nor was there doubt in the mind of the Court of Appeals. The certificate sends the member and the courts to the by-laws for the solution of the question as to what were the conditions of the accrual of liability on the part of the association. Turning there, it is suggested that the section (3 of Art. I) which states the general object of the association bears upon the question before the Court of Appeals. It is quoted above. It merely states the general object in view. It does not purport either to define the Association's liability or to state the condition thereof or to "guarantee" to the member any payments whatever. It has nothing in it which has any tendency to exclude from the by-laws conditions and limitations which follow this merely and patently introductory paragraph. It cannot aid in the construction of the subsequently written provision pertaining to liability and actions. If sections 1 and 2 of Article VIII, as previously set out, stood alone, a different question would be presented; but they are modified by the proviso which follows them, which expressly provides that "in no event does liability accrue against this Association in favor of a member until payment or payments *within the terms of his membership have actually been made by such member."* The very presence and existence of the

proviso is notice that the sections which it qualifies do not within themselves contain all the conditions of liability and that those conditions are to be found elsewhere. In fact, the only section which undertakes to define without express or necessarily implied reference to other provisions, what payments may be recovered, is section 14 of article VIII. There is nothing obscure in its position, type or language. In the certificate and in the other by-laws sign posts are put up which point plainly to this section. It is in the article which is obviously intended to and does define relator's liability and the conditions of it. It clearly states the conditions precedent to the maintenance of an action against the association by the insured. It is the only section which, fairly construed, purports to do so. One of these conditions is that the action must "be brought by the member personally, for loss of expense *actually paid in money* by such member in satisfaction of such final judgment." Is this ambiguous language? It is to be kept in mind that the policy, as the Court of Appeals correctly held, is one against loss and not one against liability. The clause last quoted defines the "loss" which will be repaid. It is a loss which has been *paid*. It must have been *actually* paid *in money*. Cases construing wills in which money was held to include property within its meaning, in response to the presumption against intestacy, are not in point. There is nothing in the context to expand the meaning of the word money beyond, at least, the popular meaning which includes everything commonly used as a medium of exchange. The language itself is restrictive and emphatic. It will not do, as the Court of Appeals pointed out, to argue that the parties should not have made the contract. That was their affair. The other parts of the contract are no more in conflict with relator's construction of section 14 than they are with the limitations upon the amount of liability or upon the sorts of injury covered by the policy. The language is unequivocal and ise to be given its plain meaning, though found in an insurance contract. [State ex rel. v. Ellison, 269 Mo.

l. c. 420.]   While, as has been suggested here, the courts "have strained the discretion that lies in the scope of judicial interpretation to prevent forfeiture of insurance," even that falls short of justifying the result in this case which, with due respect, seems to us not to be the prevention of a forfeiture of insurance but, in fact, the creation of insurance against liability for losses by means of the expansion of the policy to cover losses unequivocally excluded by the language used by the parties in their contract.   Courts may, in proper cases, *construe* the contracts of the parties, but they have no power to *construct* a new contract for them.   The reason which moved the parties to write the contract as they did is not material.   The question here is not, "Why is the provision in the contract?" but merely, "Is it there?"   Nevertheless, a reason is conceivable.   The liability of relator is limited to a rather modest sum both for injury to life or limb or property.   Could it be that relator may have desired to limit its membership to solvent persons who might be moved by considerations of their financial welfare and danger thereto if they did not conduct themselves with discretion, to make efforts to avoid the negligent injuring of others, which considerations might not so much influence one whose sole possession was, perhaps, a mortgaged automobile which he had insured?   The fact that the member in this case was solvent does not exempt him from the conditions of his contract.   It merely is the thing which made him eligible for such a membership as might, if the contract conditions were met, enable him to collect the amount his contract called for.   But the conclusive thing is that he agreed to the conditions which he now seeks to have "construed" out of his contract.   The payment he made is doubtless good between him and the injured persons.   It does not fall within his policy.   What his position will be when his notes are "actually paid in money" is not a question in this case.   The decision of the Court of Appeals conflicts with the cases which hold that unambiguous language is not open to construction to defeat an insurance company

any more than other litigants as is held in the case cited above, and others. No question concerning the liberality of construction in insurance cases is involved in this case. With all respect to our brethren of that court, we think the record should be quashed.

It is so ordered. *Graves, David E. Blair* and *Ragland, JJ.*, concur; *White, J.*, dissents; *Walker, J.*, dissents in separate opinion, in which *Woodson, C. J.*, concurs.

WALKER, J. (dissenting).—The matters submitted for consideration are of such importance, not only as involving a proper interpretation of the insurance law but the right of individual contract, that I am constrained to record at length my reasons for disagreeing with the ruling of the majority.

This was a proceeding by *certiorari* to quash the judgment of the Kansas City Court of Appeals, affirming a judgment of the Circuit Court of Johnson County rendered in the case of Pickel v. Western Automobile Insurance Co.

The Western Automobile Insurance Company is a corporation authorized to issue indemnity policies of insurance on the mutual plan to owners of automobiles. These policies constitute the contracts which define the liability of the company to its members. They are made up of the principal obligation, or the policy proper, and the by-laws of the company. To illustrate, the principal obligation is couched in the following language: "In consideration of the application for membership in the Western Automobile Indemnity Association, heretofore executed by Ben Pickel, which said application for membership is hereby referred to and made a part of this contract, and in consideration of the admission fee paid, the said Western Automobile Indemnity Association does hereby receive said Ben Pickel of Warrensburg, State of Missouri, as a member of said association. . . . There shall be payable to said member, his heirs or legal representatives, such sums of money as are guaran-

teed to said member by the by-laws of this association by reason of any claim or demand made upon said member on account of bodily injuries or death suffered or alleged to have been suffered by any person or persons through the ownership, maintenance or use of the automobile," etc.

The sections of the by-laws pertinent to the matter at issue are as follows:

"Article I.   NAME, LOCATION, OBJECT.   Section 3. The object of this association is to perfect and maintain a mutual association for the purpose of indemnifying and protecting its members against claims for loss and damage to others arising from the ownership, use and maintenance of an automobile."

"Article VIII.   INDEMNITIES OR BENEFITS.   Section 1. Each member of this association will be indemnified for any sums paid by such member in satisfaction of any judgment imposed by law on such member on account of bodily injuries," etc., . . . "This association's liability under its certificate of membership, on account of such bodily injuries or death, shall not exceed the sum or sums stated and fixed in such certificate; this association will, however, pay the expense of litigation in any case in addition to such stated limit of liability."

"Section 14.   Unless otherwise provided by law of the state within which this certificate is issued, no action shall lie against this association to recover for any indemnity or benefit guaranteed by this certificate, until final judgment has been rendered against the member, after an actual trial of the issues on the merits, in a suit duly instituted within the period limited by the Statute of Limitations; and then, only, provided such action against this association be brought by the member personally for loss or expense actually paid in money by such member in satisfaction of such final judgment.   This clause shall not in any way limit, restrict or abridge this association's defense to any such action."

While Pickel was driving his automobile mentioned in the indemnity policy, he collided with another automo-

297 Mo.—43

bile and injured two persons therein, named Hanna and Walker. Pickel was also injured in the collision and notified the insurance company of the accident. Eleven days thereafter, while he was in the hospital being treated for the injuries received, he was notified in writing that the company declined to assume any liability in the case. Hanna and Walker each brought suit against him to recover damages for the injuries they received. He transmitted the summons served upon him to the insurance company which denied liability. He thereupon assumed the defense of these cases. Walker's was tried before a jury in the regular way, and resulted in a verdict and judgment in his favor for $600. Thereafter Hanna's case was tried. A jury was waived and the cause was submitted to the court upon the pleadings and evidence, and a judgment was rendered in his favor for $500. Each judgment carried the costs; and in Walker's case these amounted to $93.40, while in Hanna's they were $10.35. Pickel paid these costs in cash. The fee for the attorney defending Pickel in the two suits was $300, which Pickel paid by giving his unsecured promissory note. In payment and satisfaction of the two judgments, Pickel gave to each of the respective holders thereof his promissory note for the amount of the judgment, which notes were secured by deeds of trust upon land belonging to him, whereupon the two judgments were released upon the margin of the records thereof.

Pickel then brought suit upon the policy of indemnity insurance to recover the total amount he had been required to expend in satisfaction of the judgments rendered against him and the expense of litigation, all of which was within the terms of the policy.

There is no occasion for controversy concerning the correctness or application of the general rule for the construction of the language of contracts. While it is true that "contracts of insurance differ in no respect from other contracts, as to the rules for their interpretation" this general rule is subject to well-defined limitations, especially applicable to this class of contracts; one

Vol. 297]    OCTOBER TERM, 1922.        675

State ex rel. Automobile Insurance Co. v. Trimble.

of which is that when the language of a policy or contract
of insurance is open to two constructions, the one most
favorable to the insured will be adopted because the
language employed in the drafting of the obligation is
that of the insurer (Mathews v. M. W. A., 236 Mo. l. c.
342); and the further salutary rule that the terms em-
ployed should be strictly construed against the company
when they tend to limit or remove the range of the prin-
cipal obligation. We cannot do better by way of ex-
emplifying the wisdom of the application of this last
limitation than to quote from Dezell v. Fidelity & Cas-
ualty Co., 176 Mo. l. c. 266, as follows: "'The legislatures
in most of the states have recognized that in the act of
making a contract for life insurance the company by
its peculiar technical knowledge has an advantage over
a man of ordinary business capacity, not trained in that
art, and have imposed certain conditions upon such con-
tracts for the protection of the insured, which will be
enforced even against the express terms of the policy.
And not only have the legislatures exerted their author-
ity in such matters, but the courts of the country also
have strained the discretion that lies in the scope of
judicial interpretation to prevent a forfeiture of the
insurance.''

To this rule of construction as applied to the char-
acter of insurance companies here under review, we give
our unqualified approval. The authority for their crea-
tion and the only reason for their recognition by the law
is that they are to afford protection within the terms
of their articles of association and by-laws to their mem-
bers.

What, therefore, is the general purpose of the com-
pany in question? We are told in no uncertain terms in
Section 3 of the initial article of its by-laws that it is
"the indemnifying and protecting of its members against
claims for loss and damage to others arising from the
ownership and maintenance of an automobile." Looking
further to the by-laws for the conditions under which
this protection will be extended, we find in Section 1 of

Article 8 that members "will be indemnified for sums paid by them in satisfaction of judgments imposed by law on account of bodily injuries" etc. It is evident, therefore, that the primary purpose of this company is protection, and that this purpose will become operative upon a compliance with the condition stated.

But it is contended under a subsequent phrase appearing in Section 14 of Article 8 of the by-laws that notwithstanding every other condition required of the member has been complied with unless the loss or expense which the member has incurred be actually paid in money in satisfaction of the judgment therefor, there is no such liability on the part of the company as is contemplated by its by-laws. To thus construe the limit of the company's liability necessitates a disregard of or an ignoring of not only the purpose of its creation, but of all the other specified conditions a compliance with which was to render the company liable. Such a strained and narrow construction not only violates the spirit of the rule unequivocally stated in the Mathews and Dezell cases, supra, but is at variance with such a wholesome interpretation of the by-laws as will effect and not defeat the purpose of the creation of the company. The liability of the company to the members having been fixed by the rendering of the judgment against the latter, of what possible concern can it be to the company as to the manner in which the judgment has been satisfied. "Paid in money" therefore should not under the facts at bar be held to mean a satisfaction in the coin of the realm or the recognized medium of exchange, but such a payment or satisfaction as will release the member from the burden of the judgment and afford proof of that fact to the company. If there were no precedents, therefore, authorizing a liberal interpretation to be given the word money, as used in these by-laws, it is vital to a just administration of the law and a proper defining of the company's liability, that one be made now. We are therefore of the opinion that the phrase "paid in money," as used in Section 14 means such a satisfaction of

the final judgment against the member as will relieve him from any further liability thereon. Any other construction of this contract authorizes the application of that well known maxim *qui haeret in litera haeret in cortice.* In thus ruling there remains no tenable ground for this action, and our writ, which was improvidently issued, should be quashed.