THE STATE EX REL. COMMONWEALTH CASUALTY COMPANY v. ARGUS COX ET AL., Judges of Springfield Court of Appeals.—14 S. W. (2d) 600.

Division Two, March 2, 1929.

*Allen & Allen* for relator.

HENWOOD, C.—Certiorari. The writ brings here for review the record of the Springfield Court of Appeals in the original suit of Robert Lusk v. Commonwealth Casualty Company. The Court of Appeals affirmed, conditionally, a judgment obtained by plaintiff in said suit, and relator now seeks to quash the record of that court, alleging a conflict between its opinion and controlling decisions of this court.

For a proper consideration of the ruling of the Court of Appeals and the facts upon which it is based, we find it necessary to quote its opinion in full, as follows:

"Action for sick benefits under an accident and sickness insurance policy. Trial by jury; verdict for plaintiff for $250, the full amount sued for. Judgment accordingly and defendant appealed.

"There is but one provision of the policy sued on which is involved in this litigation. That provision is as follows:

"'SICKNESS BENEFITS.

"'If the insured shall be continuously confined within the house, not leaving it at any time or for any purpose whatsoever, and regularly visited therein at least once in every seven days by a licensed physician and be wholly prevented from transacting any and every kind of business* solely by . . . eczema, scurvy, . . . not including their complications and consequences, provided that this insurance shall have been in continuous force for thirty days from this date prior to the contraction of the disease, the company will pay for such confinement after the first seven days and not exceeding ten weeks a weekly indemnity of twenty-five dollars ($25.00).' (Our italics.)

"There are a large number of diseases named in the policy, but the claim in this case is based upon eczema and scurvy and for that reason others are omitted in this statement. The evidence on part of plaintiff developed that the policy had been in force more than thirty days prior to the contraction of the disease named, and omitting the first seven days of his illness he was sick and unable to work for more than ten weeks, the time limited in the policy for which sick benefits would be paid; hence the merits of the case on the facts depends on whether the sickness for which the benefits are asked was covered by the terms of the policy above set out. Appellant insists that respondent has not shown that he was 'continuously confined within the house not leaving it at any time or for any purpose whatsoever,' by reason of either eczema or scurvy as required by the

policy in order to entitle respondents to sick benefits. The evidence for respondent on the question may be briefly summarized as follows:

"He lived about one and one-half miles from Marionville in Lawrence County, and after being taken sick he went to Marionville in an automobile and went to the office of Dr. Titterington and was treated by him. This was kept up for three or four weeks. During this time he was not able to do any work and remained in the house most of the time. He went out now and then, but not to work. He then went to Springfield and was in a sanitarium conducted by Dr. Anderson for five weeks. While there he was in bed in the forenoon and in the afternoon when the weather was good he would walk out some. He would sometimes walk to the post office, a distance of two and one-half blocks, and on two occasions walked to the court house, a distance of three or three and one-half blocks. Two or three times each week he rode on a street car some six or seven blocks to the public square and walked around there for a time, possibly for one hour at times. On two occasions he went with Dr. Anderson somewhere in an automobile, but where or how far or how long they were away on these occasions does not appear. After being in the sanitarium for five weeks, he returned home and was treated by a doctor for five weeks, that is, the doctor prescribed for him and on one occasion the respondent made a trip to Springfield to consult Dr. Anderson. During this time he was unable to work. He went out to the barn occasionally to see if the boys were keeping the work up in the right way. He also went to Marionville occasionally to see Dr. Titterington. No doctor ever visited him at his home either before or after his confinement in the sanitarium. Both doctors testified that he was afflicted with eczema and scurvy, and Dr. Anderson testified that he also had poison in his system which he called auto-toxemia, but which he was not able to tell much about. He said it might result from scurvy if he had a severe case of it. Anything that would prevent proper digestion and elimination of the food would cause auto-toxemia. Dr. Titterington did not discover he had auto-toxemia while he treated him. The doctors were both sure that he had eczema and scurvy, but their testimony was not very clear as to the effect of these diseases on the question of necessary confinement in the house. The real facts as to his confinement are better related by the plaintiff himself than by the doctors.

"Whether a case for the jury was made by respondent depends pretty largely upon his own testimony and the construction to be given the provisions in the policy that to entitle the insured to sick benefits, the disease with which he was afflicted must have caused him to be 'continuously confined within the house, not leaving it at any time or for any purpose whatsoever.' Our first conclusion is that the phrase 'not leaving it at any time or for any purpose whatsoever' add nothing to the meaning of the policy. If we were to give these provisions of the policy a strict literal construction the phrase

'continuously confined within the house' would, standing alone, mean that he must not be able to leave it at any time or for any purpose whatsoever. In some of the cases in which a similar provision of the policy has been construed the words 'not leaving it at any time for any purpose whatsoever' have been included and in others omitted. The construction given the provision has been the same in all cases, which is, that in order for an assured to make a case he was not required to show that he was unable to leave the house at any time for any purpose, but it was sufficient if he were confined to the house in a substantial sense. [Bradshaw v. Benevolent Assn., 112 Mo. App. 435, 87 S. W. 46; Hays v. Benevolent Assn., 127 Mo. App. 195, 104 S. W. 1141; Ramsey v. Insurance Co., 160 Mo. App. 236, 142 S. W. 763; Bass v. Pioneer Life Ins. Co., 206 Mo. App. 626, 227 S. W. 639; Olinger v. Insurance Co., 278 S. W. (Mo. App.) 86.]

"Insurance policies of this character are prepared by the insurance company. Insurance contracts of this kind are never made as a result of negotiation and discussion between the parties. The terms of the policy and its limitations and restrictions are not placed there as a result of negotiations between the parties and hence with a full understanding by the insured as well as the insurer of all its limitations and restrictions, and the insured seldom, if ever, fully understands at the time he receives the policy how restricted and limited is the protection which he purchased. He often, if not always, buys protection, as he thinks, against the loss of time by sickness, but when he undertakes to collect under his policy he finds that loss of time is not considered at all and nothing is paid because of loss of time. He now wakes up to the fact that the insurance company has attempted to so restrict its liability that he will be paid for only such time as he may be so sick as to be unable to get out of the house 'at any time or for any purpose whatsoever.' Had he known that fact when he received the policy he, in all probability, would have rejected it. *By reason of this situation the courts are disposed to construe such policies as strongly as possible in favor of the insured and against the company.* See Mathews v. Modern Woodmen, 236 Mo. 326, 139 S. W. 151, where, after a discussion of the rule of strict construction stated on page 344, it is said: 'It is not singular then that courts incline to pit judicial astuteness against the astuteness of the policy-maker.' Courts cannot, however, rewrite insurance policies. *All they can do is to give them as liberal a construction in favor of the assured as a fair application of the ordinary meaning of the language used will permit. We are of the opinion that for the five weeks respondent was confined in the sanitarium he made a case for the jury. That he was totally unable to work is clear. He spent the forenoon of each day in bed. There could, of course, be no doubt of his being confined to the house while necessarily in bed. The fact that he was able to get out part of the time in the afternoon in good weather does*

*not show that he was not confined to the house all day in a substantial sense.* (Our italics.)

"This policy also required that the insured should be visited in the house in which he was confined at least once in seven days by a licensed physician. While in the sanitarium respondent was visited by a physician twice each day, but while at home before he went to the sanitarium and also after he returned he was not visited by a physician in his residence at all. When seen by a physician during these periods he went to the office of the physician. To permit recovery for time before or after his retention in the sanitarium would be to entirely eliminate that provision of the policy by construction. This we cannot do. From what we have said it follows that recovery should have been restricted to the five weeks that respondent spent in the sanitarium instead of for ten weeks, the time limited in the policy.

"Objection is made to the instructions given and refused. We have examined them and find no substantial error therein in so far as they apply to the time respondent was confined in the sanitarium. The jury were instructed that if they should find that respondent's disability was caused by auto-toxemia and not by scurvy or eczema, they should find for defendant. As to the five weeks that respondent spent in the sanitarium, the only defense open to defendant under the facts was that the disability of respondent was caused by auto-toxemia and not by eczema or scurvy. The appellant had the full advantage of that defense and the jury found against it. That is binding upon us.

"*We think the judgment should stand as to the five weeks spent by respondent in the sanitarium.* If respondent will, within ten days, remit $125, the judgment will be affirmed for $125 as of the date of its rendition; otherwise, the judgment will be reversed and the cause remanded." (Our italics.)

The alleged conflict arises out of the ruling of the Court of Appeals that the *sick benefit clause* in question should be construed "as strongly as possible in favor of the insured and against the company;" that it should be given "as liberal a construction in favor of the assured as a fair application of the ordinary meaning of the language used will permit;" that "the fact he (plaintiff) was able to get out part of the time in the afternoon in good weather does not show that he was not confined to the house all day in *a substantial* sense;" and that, therefore, plaintiff was entitled to recover for "the five weeks spent in the sanitarium."

According to the undisputed facts, as stated by the Court of Appeals in its opinion, *plaintiff was not "continuously confined within the house" during the five weeks spent in the sanitarium.* "While there he was in bed in the forenoon and in the afternoon when the weather was good he would walk out some. He would sometimes walk to the post office, a distance of two and a half blocks, and on two

occasions walked to the court house, a distance of three or three and one-half blocks. Two or three times each week he rode on a street car some six or seven blocks to the public square and walked around there for a time, possibly for one hour at times. On two occasions he went with Dr. Anderson some where in an automobile, but where or how far or how long they were away on these occasions does not appear.'' And it was not claimed by the plaintiff in the original suit, nor is it even suggested by the Court of Appeals in its opinion, that there is any ambiguity in the language of the insurance policy involved in the suit. This court has repeatedly held, that, where the language of an insurance policy is plain and unequivocal, there is no room for construction, and the words employed must be given their usual and natural meaning. [State ex rel. v. Daues, 289 S. W. 957; State ex rel. v. Trimble, 306 Mo. 295, 267 S. W. 876; State ex rel. v. Allen, 305 Mo. 607, 267 S. W. 379; State ex rel. v. Trimble, 297 Mo. 659, 249 S. W. 902; State ex rel. v. Ellison, 269 Mo. 410, 190 S. W. 879.] In the case of State ex rel. v. Trimble, 306 Mo. l. c. 309, supra, this court (en banc) said: ''The plain language of this policy and slip is without ambiguity and there is no room for construction. In construing it contrary to that meaning, the Court of Appeals brought its decision into conflict with decisions of this court. Unequivocal language is to be given its plain meaning, though found in an insurance contract. [State ex rel. v. Ellison, 269 Mo. 410; State ex rel. v. Trimble, 297 Mo. 659.] This is the general rule everywhere, as shown by text-books and decisions.''

Applying this rule to the plain, unequivocal language of the insurance policy now under consideration, it seems perfectly clear that the insured (plaintiff in the original suit) is not entitled to recover sick benefits thereunder, either for the five weeks spent in the sanitarium or for the five weeks spent at his home. It will be noted that the Court of Appeals applied this rule as to the five weeks plaintiff spent in his home, because *he was not "regularly visited therein at least once in every seven days by a licensed physician,"* and for that reason, held that he cannot recover sick benefits covering that period. But, in dealing with language equally plain and unequivocal, that is, that *"the insured shall be continuously confined within the house,"* the Court of Appeals applied the rules of construction ordinarily applicable to insurance policies which contain ambiguous language or contradictory provisions; and, by giving the words, "continuously confined within the house" a liberal construction, held, that plaintiff was confined to the house "in a substantial sense" during the five weeks spent in the sanitarium, and was, therefore, entitled to recover sick benefits therefor, conceding, however, that a strict construction of the words mentioned would bar such recovery. In this connection, it should also be noted that the case of Mathews v. Modern Woodmen, 236 Mo. 326, 139 S. W. 151, cited by the Court of Appeals in support of its opinion, has no application

here. It belongs to that class of cases wherein this court has been called upon to *construe* insurance contracts containing ambiguous or contradictory terms and provisions. This readily appears from the following announcement of Judge LAMM in the Mathews case: "The insurance policy in suit is a typical one of its kind. Its elements are drawn from several sources—by-laws, application, etc. The provisions thus brought together in a policy-bundle create ambiguities and seeming contradictions, crying aloud for elucidation and harmonizing. They must be brayed in the mortar of reason with the pestle of good sense" (l. c. 345).

It follows that the opinion of the Court of Appeals is in conflict with controlling decisions of this court, and that the record should be quashed. It is so ordered. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.