AGNES D. BOWDEN, APPELLANT, v. METROPOLITAN LIFE INSURANCE Co., RESPONDENT.—59 S. W. (2d) 787.

Springfield Court of Appeals. April 25, 1933.

*Cannan & Stiles* and *Sam J. Corbett* for appellant.

*Ward & Reeves* for respondent.

ALLEN, P. J.—On August 12, 1929, respondent, in the State of Arkansas, issued its policy of insurance on the life of Dewey B. Bowdon, for one thousand ($1,000) dollars. Agnes D. Bowdon, his wife, was beneficiary, both then living in Arkansas. The first quarterly premium of five and 65/100 ($5.65) dollars was paid on the date of issue; like quarterly payments thereafter, were due on the 12th day of November, February and May. The insured was killed near Truman, Arkansas, on the 5th day of February, 1930, by being struck and run over by a Frisco railroad train, known as the Sunnyland.

Mrs. Bowdon, the widow of insured, shortly after his death, removed to Caruthersville, Pemiscot County, Missouri, where on the 11th day of October, 1930, she filed in the circuit court her suit against respondent, on said policy of insurance, asking for a judg-

ment of $1,000 with interest at six per cent from April, 1930, and for ten per cent additional for attorney's fees and for vexatious delay; to which respondent, by its answer, admitted the issuance of the policy, the payment of the first quarterly premium and the death of assured, in February, 1930, but specifically denied the payment to or receipt by it of any further premium installment, and that on account of which said policy had lapsed; and further alleged as an affirmative defense, that insured, within one year from the date of said policy died by his own act, by intentionally placing himself in front of a rapidly moving train near Truman, Arkansas, about February, 1930; and that it had tendered to plaintiff before the filing of this suit the sum of $5.65, the amount of the first and only premium received by it from insured, and further alleged in its answer the validity of the suicide clause in said policy as enunciated by the Supreme Court of the State of Arkansas, in the following cases: New York Life Insurance Co. v. Watters, 154 Ark. 569; Grand Lodge A. O. U. W. v. Bannister, 80 Ark. 190; Industrial Mutual Ind. Co. v. Watt, 95 Ark. 456; Home Life Ins. Co. v. Miller, 33 S. W. (2d) 1102 (Ark. Sup.). And denying liability to plaintiff for any amount, except the $5.65, paid as first quarterly premium, which it tendered to plaintiff in court.

At the trial of this case, in the circuit court, the plaintiff offered the policy in evidence, whereupon the defendant, respondent, stated to the court that under the pleadings the defendant had the burden of proof and asked the right to open and close the case, which request was by the court granted, and the policy sued on was offered by defendant. Amongst other things the policy contains the following provisions:

"This policy is issued in consideration of the  .  .  .  payment for said insurance on the life of the above named insured, of five dollars and sixty-five cents (which maintains this policy in force for a period of three months from its date of issue as set forth below) and of the payment hereafter of a like 1/4 annual premium on each 12th day of November, February, May and August (hereafter called due date) until fifty-four full years' premiums shall have been paid or until the prior death of the insured."

"  .  .  .  The payment of a premium shall not maintain this policy in force beyond the due date when the next premium is payable, except as hereinafter provided.

"If the premium shall have been paid for the period during which the death of the insured occurs, then if such period be greater than one month, the company will pay, in addition to the amount otherwise payable under this policy, that portion of such premium, applicable to the policy month or months subsequent to the policy month, when death occurred, a grace period of thirty-one days, without interest charge, will be granted for the payment of every premium after

the first, during which grace period the insurance shall continue in force, but if the insured dies during such period, the portion of the unpaid premium for insurance for the current policy month shall be considered as an indebtedness to the company for which the policy is security.

"(Provision 5.) *Suicide.* If the insured within one year from the date of the issue hereof die by his own hand or act, whether sane or insane, the liability of the company hereunder shall be limited to an amount equal to the premiums which have been received, without interest."

The evidence—Leon C. Blackman, Supervisor of the maintenance of the records for defendant, testified that the records of the company, in his charge, show that one quarterly premium of $5.65 only, was paid on the policy of insured. That no further premium was ever paid and that the policy lapsed on November 12, 1929.

The testimony of Clyde Houston and Curtis Hurst, was that they saw insured, Dewey B. Bowdon on the morning of February 5, 1930, leap or jump in front of the Frisco train (the Sunnyland), near Truman, Arkansas, while the train was running at a rapid rate of speed, fifty or sixty miles per hour, and that he was killed outright. They each saw deceased first go near the railroad tracks, stop and look in the direction of the approaching train, until it had appeared within two or three times the distance between the telegraph poles, when he made the leap between the rails and lie down, or throw himself in front of the moving train.

Mrs. Bowdon and John Anten each testified that they had seen nothing unusual in the conduct and demeanor of deceased, immediately prior to his death. Mrs. Bowdon said her husband had not had any troubles, domestic or otherwise, to cause him to take his own life; his family life had been pleasant and she knew of no business trouble that would cause him to do so.

That after her husband's death she went to see a Mr. Kimbrough, who was in charge of respondent's office at Jonesboro, that he told her that her husband's insurance was in force, and made out the proof of death for her, and afterwards reported to her that the company refused to pay the insurance on account of suicide.

Nine members of the jury found for the plaintiff, in the sum of $1295, but plaintiff immediately entered a *remittitur* in the sum of $295.

The motion of defendant, for a new trial, asserts several grounds, one of which is "because the verdict of the jury is against the weight of the evidence."

1. "The trial court has a right to grant one new trial to each party on the ground alone that the verdict is against the weight of the evidence, and since this was the first trial of the case it was

within the discretion of the trial court to grant plaintiff a new trial, on the ground that the verdict is against the weight of the evidence, when the trial court fails to specify the ground on which it sustained the motion for a new trial, and one of the grounds assigned therein, is that the verdict is against the evidence, the appellate court will presume that the trial court sustained the motion on that ground.'' [Riche v. City of St. Joseph and Meyer Block, 326 Mo. 691, l. c. 694, 695, 32 S. W. 578; Gray v. City of Hannibal, 29 S. W. (2d) 710, l. c. 713.]

The weight of the evidence upon the part of defendant clearly preponderates in this case.

2. It is our opinion that the trial court erred in instructing the jury that the evidence relied on by the defendant to establish the defense of suicide, is circumstantial evidence, and before you can find for the defendant on this defense, the defendant must establish facts and circumstances by the evidence which excludes any reasonable hypothesis of accidental death, for in such case the law presumes that the insured did not commit suicide, unless the facts and circumstances offered in evidence exclude any reasonable hypothesis that the death of the assured was accidental.

Judge FARRIS speaking for the Supreme Court in the case of Brunswick v. Insurance Co., 278 Mo. l. c. 172, says:

''The presumption against suicide is a rule of law deduced from convenience and necessity; it is based on the well nigh universal human characteristic of love of life and fear of death, and it arises in a case whenever the cause of death is in issue and the evidence discloses a state of facts consistent with either accident or suicide.''

''If there is evidence both for and against suicide, the presumption (unless as some of the cases hold, and the reason of the thing makes plausible, the evidence be equally balanced), has no place in the reasoning as its very nature indicates; if therefore invoked or present, it vanishes and the question is to be thereupon resolved upon the evidence. Obviously the presumption against suicide cannot continue to exist in the face of evidence showing suicide, for such a view would be utterly subversive of the well settled doctrine figuratively but strikingly announced by LAMM, J., substantially, to-wit; that presumptions are the bats of the law, which the light of evidence frightens and causes to fly away.'' . . .

In the same case Judge FARRIS approvingly quotes from the Supreme Court of Wisconsin, as follows:

''Where the reasonable probabilities on the evidence all point to suicide as the cause of death, so as to establish it in the light of reason and common sense with such certainty as to leave no room for reasonable controversy on the subject, a jury should not be permitted to find to the contrary, and have such finding stand as a verity in the

case, but the question should be decided by the trial court as one of law."

In the instant case the evidence as to suicide was direct. Two witnesses, Clyde Houston and Curtis Hurst each testified that on or about February 5, 1930, they saw the insured, Dewey B. Bowdon, walk to the railroad track and stand a moment, looking at or toward the rapidly approaching train, then spring or jump in front of it, in the middle of the track, placing himself between the rails with his head toward the train, which was then some two or three hundred feet from him.

The only evidence offered by plaintiff on that subject was that of herself and one other man, who testified that the deceased had no reason that they knew of to commit suicide and had given no indication of a state of mind that might attend a person contemplating suicide.

The action of the deceased in jumping or springing before the train is direct and positive evidence, and we think it was very improper to so instruct the jury as to leave the impression that such direct evidence could be treated as circumstantial.

This court, by Judge Cox speaking, in the case of Dickey v. Supreme Tribe of Ben Hur, 253 S. W. 417, l. c. 420, said:

That "the instructions to the jury in a civil case should only require suicide to be proven by a preponderance of the evidence, the same as any other fact in issue, even though all the evidence on that question is circumstantial." [Citing also Parker v. Aetna Life Insurance Co., 289 Mo. l. c. 69, 70.]

3. Appellant's Instruction No. 2, given by the trial court, is as follows:

"The court instructs the jury that the defendant pleads in this case as one of its defenses that the insured committed suicide, and that defendant has tendered to the beneficiary all of the premiums paid on said policy, and in this connection you are further instructed that if you find and believe from the evidence that the insured has paid all the premiums due on said policy of insurance at the time of his death and that defendant has not tendered all of the premiums paid, but only a part thereof, then if you so find, you are instructed that the defendant is precluded from invoking the defense of suicide and you will disregard the same in arriving at your verdict."

The above instruction was evidently offered and given on the theory that this case falls within the provisions of Section 5735, Revised Statutes 1929, relating to misrepresentations, in obtaining the policy or upon the doctrine of estoppel, where the insured does something which is prohibited by the contract of insurance the doing of which invalidates the policy or leaves it open for cancellation or rescission, and insurer continues to hold the premiums, though claim-

ing that the policy has been invalidated or subjected to rescission or cancellation by the act of insured.

Appellant cites a number of authorities in support of his contention, amongst which is the case of Dyer v. American Insurance Co., 244 S. W. 964, as within the reasoning of which counsel urges that the case at bar should be considered. Upon examination of the Dyer case we do not agree with the conclusion of the learned counsel for appellant. In the Dyer case referred to above, the policy provided that:

"This company reserves the right to cancel this policy or any part thereof by tendering to the insured the unearned premium."

It was alleged that the insured, after the execution of the policy, executed a mortgage and deed of trust upon the dwelling house mentioned in the policy, and upon the land upon which it was situated. That the incumbrance was in force at the time of the fire. That the defendant had no knowledge of the incumbrance until after the fire, and alleging that on account of said incumbrance the policy was void. The company, although aware of the fire, failed to tender the insured the unearned premium, as required by provision of the policy.

The Dyer case is not in point in this case. The policy here sued on contains the following provision, designated "Provision 5."

"*Suicide.*

"If the insured within one year from the date of the issue hereof, die by his own hand or act, whether sane or insane, the liability of the company hereunder shall be limited to an amount equal to the premiums, which have been received, without interest."

Suicide of deceased, under the above provision cannot be said to be evidence of a misrepresentation in obtaining the policy or a fraud thereafter committed. Neither does it invalidate the policy since by its plain terms the suicide paragraph merely limits the liability of the insurer in case of suicide to an amount equal to the premiums which have been received, without interest.

Defendant claims the second quarterly premium had not been paid. If it had not been paid, then by the terms of the policy it had lapsed, and the company would not be liable under any contingency. If the second premium had been paid, and the insured had not committed suicide, the liability would be one thousand ($1,000) dollars. If the second premium had been paid and insured did commit suicide the liability would be the sum of the two quarterly premiums of eleven and 30/100 ($11.30) dollars. No tender of premiums would be necessary upon the part of defendant, except to avoid unnecessary cost of trial.

In the case of Grover v. Hartford Accident and Indemnity Co., 51 S. W. (2d) 210, l. c. 211, the court said:

"Where the provisions of the policy are plain, unambiguous and unequivocal, it is the duty of the court to apply its terms as written,

and not to construe them," citing State ex rel. v. Trimble, 297 Mo. 569, 249 S. W. 902; State ex rel. v. Cox, 322 Mo. 38, 14 S. W. (2d) 600.

Section 5, of the policy quoted above, is plain, unambiguous and unequivocal, and cannot be reasonably misconstrued, and as was said in the Grover case, supra, "It is the duty of the court to apply its terms as written and not to construe them."

Provision 5, of the policy sued on in this case, limits the liability of the company to an amount equal to the premiums which have been paid, without interest, which is either $5.65, the amount of the first quarterly payment, or $11.30, the amount of the first and second quarterly payments, which is a question of fact for the jury, if the verdict is that plaintiff committed suicide.

By reason of the errors heretofore enumerated, including the fact that the trial court assigned no specific reason for sustaining the respondent's motion for a new trial, it must be presumed to have done so, because the verdict was against the weight of the evidence.

Therefore, the judgment of the circuit court, sustaining the motion for a new trial, is affirmed, and case remanded, subject to suggestions hereinbefore made. *Bailey* and *Smith, JJ.*, concur.