CHARLES F. ADAMS, RESPONDENT, v. METROPOLITAN LIFE INSURANCE CO., APPELLANT.—74 S. W. (2d) 899.

Springfield Court of Appeals. August 24, 1934.

*Fordyce, White, Mayne & Williams* for appellant.

*W. A. Brookshire* for respondent.

ALLEN, P. J.—This action was instituted in the Circuit Court of Madison County, Missouri, returnable to the March term, 1932, and upon change of venue was tried in the Butler County Circuit Court, at its January term, 1933.

The respondent alleged that he was injured on December 18, 1923, while he was in the employ of the St. Joseph Lead Company, at its mine in Flat River, Missouri.

Appellant had previously thereto issued to the employer (Lead Company) a policy of insurance styled Group Insurance 368-G, and thereafter issued to respondent a certificate of insurance, styled 1336, in the sum of $1625, and also a serial certificate number 1336-A, in the sum of $1,000, by which policies respondent alleged that he was entitled to a claim for total and permanent disability, in five annual installments of $561.75 each; and further alleged that during

the latter part of 1924 he had made due proof of disability to appellant company, according to the terms and conditions of said insurance contracts.

The verdict and judgment was for plaintiff (respondent) in the sum of $2808.75.

Appellant's answer, amongst other matters, denied that respondent prior to the filing of his action, had made due proof of any claim, to the home office of appellant, as required by the terms and conditions of the said policy of insurance, which terms are set forth in Paragraph 7 thereof, and are as follows, to-wit:

"7. *Total and Permanent Disability Benefits*—On receipt by the Company, at its Home Office of due proof that any employee injured hereunder has become wholly and permanently disabled by accidental injury or disease, before attaining the age of sixty years, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, the company will waive the payment of each premium applicable to the insurance on the life of such disabled employee that may become payable thereafter under this policy, during such disability, and in addition to such waiver will pay to such employee during such disability, in full settlement of all obligations hereunder pertaining to such employee, and in lieu of the payment of insurance as herein provided, such monthly or yearly installments as may be selected by such employee, by written notice to the company, at its Home Office, on the following basis, to-wit:

"On basis of $1,000.00 of insurance, either

| | |
|---|---|
| "Sixty monthly installments of | $18.00, or |
| "Twenty annual installments of | $67.98, or |
| "Fifteen annual installments of | $83.90, or |
| "Ten annual installments of | $116.18, or |
| "Five annual installments of | $214.00. |

"The First installment to be paid six months after receipt of due proof of total and permanent disability."

Since in our opinion, the question of due proof, required of respondent to appellant, is the sole and only question to be considered by us, we shall discuss only the evidence relating thereto.

Respondent's testimony was, in substance, as follows:

"I went back to the St. Joseph Lead Company, and asked for a job. Mr. Knowles gave me a blank and told me if I wanted to draw the insurance to make out an affidavit. He told me that I would have to be permanently and totally disabled, and I asked him what that was and he said 'blind and disabled to feed yourself.' I never did fill out the application. That was in 1926. I kept on farming until about 1930, when I sold the farm."

The testimony of J. A. Knowles, for appellant, was as follows:

"I live at Farmington, Missouri. Adams was employed by the Doe

Run Lead Company when I was assistant employment manager there. That was before his injury. I have known him for fifteen or eighteen years. He came in my office several times while he was recuperating from this injury. He asked me about his insurance. I told him that before he could recover his insurance he would have to show by medical proof that he was permanently and totally disabled, and I got the blank and showed him and also a little booklet that we had there, and read to him the disability clause. He said that he didn't think that he would come under any of these things. He said he wasn't totally and permanently disabled according to those questions and answers on the blank, and also the statements that were included in the little booklet. He stated that he was not permanently and totally disabled. That was after he left the employment of the company. He made inquiry at the time he procured the blanks for insurance as to whether we had any work for him. That was probably a year and a half after he was injured.''

So far as the evidence in the entire record is concerned, no notice of any claim in this case was ever given by respondent to appellant, or to any agent or representative thereof.

The evidence is that Knowles, who in 1926 gave respondent the blank form or affidavit to fill out, was the agent of the employer, the Lead Company; however respondent says he never did fill it out, but kept on farming until 1930, at which time he said he sold his farm. Respondent did not bring this suit until the first part of 1932.

Paragraph 7, of the group policy, in suit, shows that appellant contracted and agreed that upon receipt by the appellant company *at its home office* of due proof that any employee insured thereunder, had become wholly and permanently disabled by accidental injury or disease, so that he will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, the company will, in addition to waiving further payments of premiums, also pay to the employee during such disability all obligations therefor, as provided by the policy, that is either yearly or monthly, the first payment to be made six months after due proof of such total and permanent disability.

The record in this case fails to show that any notice of respondent's injury was ever given to appellant previous to the filing of respondent's petition and the service of the same on the appellant company. More than eight years subsequent to the receipt of the injuries by respondent, the first and only proceeding had or taken by him, relating thereto, was the filing of this action in 1932. Nearly three years after he was injured he went to the lead company for the purpose of applying for a job, at which time Knowles, the agent of the lead company, gave him a blank and told him if he wanted to draw the insurance to make out an affidavit. Knowles told him that was necessary before he could recover his insurance, and that he would

have to show by medical proof that he was permanently and totally disabled, and gave him a blank form, which respondent received and departed. Respondent examined the statement or affidavit, then told Knowles that he didn't think he would come under any of the things stated in the blank affidavit, and also said at the time that he was not permanently or totally disabled, which conversation occurred a year and a half or more after the injuries had occurred. There was no proof that Knowles was an agent of the insurance company, but on the contrary he stated that he was an employee of the lead company. Nothing in the evidence discloses that notice of the injuries received by respondent in 1923 was ever brought to appellant's notice or knowledge until the year 1932, more than eight years thereafter; and that only by the filing of the petition herein and the service thereof on the appellant.

Attention is directed to the following terms, which are included in the policy.

"And in addition to such waiver will pay to such employee during such disability, in full settlement of all obligations hereunder, pertaining to such employee, and in lieu of the payment of insurance as herein provided, such monthly or yearly installments, as may be selected by such employee, by written notice to the company, at its home office, on the following basis, to-wit: . . . The first installment to be paid six months after receipt of due proof of total and permanent disability." No such notice was ever given prior to this suit.

Appellant's third assignment of error, was that "the court erred in giving plaintiff's instruction No. 1, which submitted to the jury the issue of whether he had made due proof to the home office of the company of total and permanent disability, when the record is not only absolutely devoid of any proof that he did so, but shows affirmatively, from the plaintiff's own lips, that he had not done so."

The only evidence on that subject was, that when respondent went back to the lead company and asked for a job, Knowles gave him a blank affidavit and told him that if he wanted to draw the insurance to make out an affidavit; but respondent said he never did fill out the application. That was in 1926.

Therefore, in our opinion, it was very clearly established that no notice of any kind of the injuries received by respondent, was ever brought to appellant's knowledge, so far as the record in this case is concerned, until the bringing of this suit, in 1932, almost nine years after the cause of action, if any, had accrued.

In 14 Ruling Case Law, Section 102, page 925, occurs the following statement, with reference to the construction of insurance policies:

"An insurance policy is a contract and the rules established for the construction of written instruments apply to contracts of insurance. Generally it may be said that the intent of the parties should govern the interpretation of a policy. An insurance policy

is to be construed according to its sense and meaning as collected in the first place, from the terms used in it, which terms are themselves to be understood in their plain, ordinary and popular sense, unless they have generally in respect to the subject-matter, as by the known usage of trade or the like, acquired a peculiar sense, distinct from the popular sense of the same words. . . . A policy should neither, on the one hand, be so narrowly or technically interpreted as to frustrate its obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability fairly within the scope or spirit of its terms.''

Section 103, page 926, says: ''While in some early cases it was said that insurance policies shall be very liberally construed to effect the intention of the parties, in accordance with the general rule, that in case of doubt a contract will be construed most strongly against the party who framed it, it may be said to be the primary rule that such contracts are to be most strongly construed against the insurer and in favor of the insured, especially where a forfeiture is involved, so that indemnity will be granted rather than denied. Courts have sometimes been too astute in their search for reasons to maintain the liability of insurance companies in the face of conditions limiting such liability. And yet a contract of insurance in this regard is no different from other contracts; and the function of courts is to construe them, not to make them. In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them. . . . The rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood, in their plain, ordinary and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence, as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements, compliance with which is made the condition to liability thereon.''

In the case of St. Louis Architectural Iron Co. v. New Amsterdam Casualty Co., 40 Fed. (2d) l. c. 348, the court uses the following language:

''Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy or policies, embodying the agreement of the parties. For a comparatively small consideration the insurer undertakes to guarantee the insured against loss or

damage upon the terms and conditions agreed upon, and upon no other, and when called upon to pay in case of loss, the insurer therefor may justly insist upon fulfillment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for loss.''

Paragraph 7, of the policy of insurance, relating to due proof of permanent and total disability, is clear, concise and unequivocal. It provides that the company, after due proof of such disability, made to its home office, will, within six months thereafter pay certain amounts stipulated therein.

The petition in this case alleges no fraud on the part of the company, neither does respondent plead either waiver 'or estoppel, on the part of the appellant company, to interpose this clause, in defense of this action. The petition pleads a performance of the contract on the part of the respondent. It pleads that due proof was made, but the evidence fails to show that any proof of disability was made to the company, within the terms of the above clause. Under this clause of the policy, what constitutes due proof might be a question of fact, but the respondent herein, by his own testimony, clearly shows, that he made no effort to comply with the terms of this clause, in the insurance contract; neither does he plead any excuse for such failure, nor waiver, estoppel or fraud on the part of the company. Liability would only attach to the company six months after due proof was made at its home office. Respondent does not either plead or prove that due proof or notice was made to any agent of the appellant, either at its home office, or any other place; instead he waits more than eight years, files this suit, states that he made due proof to the company, in his petition, and yet his evidence shows that he made no effort whatsoever, to comply with the terms of the policy regarding due proof.

This case does not come within the terms of those cases where a lack of proof or notice has been waived by the insurer, or where, insurer had actual notice of a contingency that might cause the policy to become due and payable, or where the insurer had not been prejudiced by such lack of notice or proof, and does not come within the rule of those cases where the insurer, by its conduct, has waived proof or estopped itself, by reason of its conduct, to set up a failure to give proof or notice, as a defense.

The provision of the policy, mentioned above, to-wit, Section 7, is clear, plain and unambiguous, and the policy issued to the St. Joseph Lead Company, and the certificates of insurance issued to the respondent, contained no terms or provisions that would make this clause ambiguous.

Therefore, the rules of law announced in Matthews v. Modern Woodmen Insurance Co., 236 Mo. 326, 139 S. W. 151, and other cases, holding that where ambiguities exist in insurance contracts,

the contract must be construed strictly against the insurer, and in favor of the insured, do not apply.

The contract of insurance in this case, and the clause in question being clear and unambiguous, then it must be construed as any other contract, and the plain unequivocal language thereof is to be given its plain meaning, even though found in an insurance contract.

In the case of State ex rel. N. Y. Life Insurance Company v. Trimble, 267 S. W. 876, the court on page 880 says:

"The plain language of this policy and slip is without ambiguity, and there is no room for construction. In construing it contrary to that meaning, the Court of Appeals brought its decision into conflict with the decisions of this court. Unequivocal language is to be given its plain meaning, though found in an insurance contract. State ex rel. v. Ellison, 269 Mo. 1. c. 420, 190 S. W. 274; State ex rel. v. Trimble, 249 S. W. 1. c. 905. This is the general rule everywhere, as shown by textbooks and decisions."

The case of State ex rel. Park v. Daues, 289 S. W. 957, 1. c. 960, likewise holds: "The above case clearly announces two rules. One to the effect that where language used in an insurance contract is ambiguous the canons of construction hereinbefore quoted, are ordinarily applicable; second, that where the language used in an insurance contract is plain and unambiguous, full and complete, such canons of construction are not ordinarily applicable."

Again, in the case of State ex rel. American Fire Insurance Co. v. Ellison, 269 Mo. 410, 190 S. W. 879, 1. c. 882, the Supreme Court announces again the following rule in interpreting an insurance contract:

"The forfeiture clause here in question is part of a solemn contract made between corporations, both of which are competent to make contracts; there is no phase of equitable jurisdiction involved or invoked. We are here merely to say what that clause means, not to write into it terms or conditions which does not contain, for we may assume, since the parties to this contract were *sui juris*, since they were not overreached, since neither fraud nor mistake nor misrepresentation had aught to do with the making of this contract in the terms in which it was made, that had it been intended to make the actual increase of the hazard assumed a part of the contract, and a condition precedent to the forfeiture, they would have said so. . . . If parties will make such contracts they have no right to expect courts to disregard the law in construing them."

To the end that ambiguous provisions in insurance policies shall not pervert their fair and just application, the rule of our courts has been very properly directed to a liberal construction and interpretation of their terms. However it has been clearly, consistently and repeatedly held where the language of a policy is not ambiguous but on the contrary is plain and unequivocal, there is no room for construction, and that in such cases, the words employed in the policy

must be given their usual and plain meaning. [State v. Trimble, 68 S. W. (2d) 685, l. c. 687; Wendorff v. Mo. State Life Ins. Co., 318 Mo. 363, 1 S. W. (2d) l. c. 101; Latcherman v. Mutual Ben. Health & Acc. Assn., 60 S. W. (2d) 646, l. c. 647; City of Portageville v. Fid. & Cas. Co., 63 S. W. (2d) 411, l. c. 412; Newbill v. Union Ind. Co., 60 S. W. (2d) 658, l. c. 660; Medlin v. Amer. Bankers Ins. Co., 59 S. W. (2d) 738, l. c. 741; Bowdon v. Met. Life Ins. Co., 59 S. W. (2d) 787, l. c. 790, p. 9; Paul v. Missouri St. Life Ins. Co., 52 S. W. (2d) 437; Grover v. Hartford Acc. & Ind. Co., 51 S. W. (2d) 210; State ex rel. Commonwealth Cas. Co. v. Cox, 14 S. W. (2d) 600; St. Louis Architectural Iron Co. v. New Amst. Cas. Co., 40 Fed. (2d) 344, l. c. 348; Phelan v. New Amst. Cas. Co., 5 Fed. 810, l. c. 812, 813.].

There being no ambiguities in the policy in question, we must hold that it was the duty of the respondent to make some proof or give some notice to the appellant, regarding his disability. What should constitute that proof we are not now deciding; what should constitute due proof, under some circumstances would be a question of fact, to be submitted, but no such question of fact is raised in this case, because no proof to appellant, the insurer, of any kind or character, whatsoever, was made in this case.

Therefore, we must hold that the contract of insurance was not breached by the appellant, because such breach would not take place until there was a failure or refusal on the part of the appellant to pay, after due proof. The filing of proof under Clause 7, was a condition precedent to plaintiff's (respondent's) right to maintain this action, which is for the breach of contract.

Respondent not having complied with the terms and provisions of the contract, regarding due proof, or any proof, is not entitled to recover in this action.

Therefore, for the reasons hereinbefore stated, the judgment of the trial court must be, and is reversed. *Bailey* and *Smith, JJ.*, concur.