## Flexner, et al. v. Meyer's Executrix.

(Decided March 25, 1921.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Warehousemen—Warehouse Receipts—Innocent Purchasers—Estoppel.—The owner of six warehouse receipts endorsed them in blank, placed them in his safe and told his bookkeeper to cancel four of them: Held, that the owner having put it in the power of his agent to impose upon a third party he will not be permitted to insist on his title as against such party if the latter was a purchaser for value and without notice.

2. Warehousemen—Warehouse Receipts—Innocent Purchasers—Evidence.—In an action to recover on warehouse receipts evidence examined and held to show that the holder was an innocent purchaser for value without notice of the fact that the receipts had been stolen by the owner's bookkeeper.

EDWARDS, OGDEN & PEAK, RICHARD P. DIETZMAN and ANGUSTUS E. WILLSON for appellants.

WILLIAM W. THUM for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

E. L. Meyer, trading and doing business as the Meyer Liquor Company, brought this suit against Edward M. Flexner, the Flexner Distilling Company and the Pleasure Ridge Park Distillery, to compel the delivery, or re-

cover the value, of thirty barrels of whiskey, represented by six warehouse receipts for five barrels each. During the progress of the action E. L. Meyer died, and the cause was revived in the name of Lillie E. Meyer, as executrix. The defendants pleaded in substance that the warehouse receipts were stolen and the plaintiff had notice thereof. Defendants further claimed that four of the receipts were ordered cancelled, and that the twenty barrels of whiskey for which the receipts were given were sold to other parties. On final hearing plaintiff was given a money judgment for the value of twenty barrels, and defendants, by another order, were directed to deliver the remaining ten barrels. The latter order was suspended pending this appeal, by the execution of bond by the defendants that, in the event of an adverse decision, they would deliver the whiskey, or pay the plaintiff its money value with interest. From the judgment so entered, defendants appeal.

The warehouse receipts were issued in conformity with the warehouse laws of this state and the United States. Each was signed by the distilling company and by E. M. Flexner, the distiller. They were each issued for account of and subject to the order of Edward M. Flexner, and were endorsed by him.

It appears that Albert A. Wolf, Flexner's bookkeeper, first pledged the receipts to R. F. Warfield, vice president of the American Southern National Bank of Louisville, to secure a loan of $320.00. Warfield says that the loan was made under the following circumstances: Wolf came to him for financial assistance, saying that Mr. Flexner wanted to help him, but having no cash, would let him have warehouse receipts on which he could borrow the money. Thereupon Warfield took his note for $120.00 payable July 2, 1917, and secured by three warehouse receipts for five barrels each. On July 2, 1917, Wolf borrowed an additional sum of $200.00, pledging as collateral the six warehouse receipts sued upon in this action. The notes not being paid at maturity, Warfield kept after Wolf to sell the whiskey and pay the notes. On December 14, 1917, Wolf came to the bank and introduced a man by the name of Meyer of the Meyer Liquor Company, and stated to Warfield that he had sold the whiskey to him. Not knowing anything about Meyer, Warfield asked to have the check for the purchase price certified. Wolf then gave Warfield a letter authorizing

him to sell the receipts, deduct the amount of the two notes and pay the balance to Wolf. At that time, Wolf was representing Flexner and would frequently collect money and pay Flexner's drafts. The loan was not made by the bank, but was made by Warfield individually, though he deposited the notes and collateral with the bank for collection. The evidence of Bernard Meyer, who represented his father in the transaction, is in substance as follows: Prior to the purchase, Meyer had tried to buy some of the Flexner whiskey but ascertained that the seller could not guarantee the delivery of the whiskey because there had been some duplication of warehouse receipts. Wolf came to Meyer and told him that he had a party who had thirty barrels of Flexner whiskey for sale that could be bought cheap. Afterwards, Wolf said that the certificates were owned by the American Southern National bank. After some discussion as to the price, Meyer agreed to give $650.00 for the thirty barrels, he, of course, assuming the charges and taxes thereon which amounted to about $3,400.00. Fearing that there might be some duplication of the receipts, Meyer went to Flexner's place of business and found no one there but Wolf. Wolf assured him that the receipts were all right, and exhibited the books showing that the receipts were regularly issued. On the next day, he and Wolf went to the American Southern National bank. After some discussion between Wolf and Warfield, Warfield said to Meyer, "We will take your $650.00," and inquired if Meyer had a certified check for that amount. Meyer replied that he did not have, but would go to the bank and get one. He then went to the Union National bank, and had the check certified. On his return, Wolf and Warfield were not there, having gone to see Thomas S. Jones to ascertain if Warfield had a right to sell the receipts. On their return Meyer delivered the check to Warfield and Warfield delivered the receipts. Meyer believed that he was buying the receipts from the bank, and that the bank had the rightful ownership and possession of the receipts. He never learned that there was any question as to the rightful ownership of the receipts until about a week after he tendered the first five barrels of whiskey for tax payment. At that time the whiskey was worth about $35.00 a barrel, less charges of $5.00 a barrel. Wolf did not tell him that he was interested in the sale, nor did he pay Wolf anything on the side. The

only amount which changed hands was the check which he gave to Mr. Warfield. Flexner's testimony is as follows: The receipts were in the safe for the purpose of hypothecation or sale, and Wolf had access to the safe. Prior to the transaction in question he had directed Wolf to cancel four of the receipts and believed he had done so. He did not authorize Wolf to use or hypothecate the receipts, but Wolf stole them. Wolf had no general authority to attend to all of his business, but only such specific authority as he gave him from time to time. According to his testimony, the whiskey was worth about $2,000.00 or $2,100.00, and about the same value was placed thereon by another witness.

Appellant's first contention is that even if it be conceded that Meyer was a *bona fide* purchaser for value, nevertheless he will not be protected as he purchased the receipts from Wolf who had stolen them. Section 4770, Kentucky Statutes, provides: "All receipts issued by any warehouseman as provided by this chapter shall be negotiable and transferable, by endorsement in blank, or by special endorsement, and with like liability as bills of exchange are, and with like remedy thereon." While it has been held that the statutory provisions in, certain states did not make warehouse receipts negotiable in the same sense as bills of exchange and promissory notes are negotiable, Citizens' Bank v. Arkansas Compress, etc., Co., 80 Ark. 601, 96 S. W. 997, 117 A. S. R. 102; Anderson v. Portland Flouring Mills Co., 37 Ore. 483, 60 Pac. 839, 32 A. S. R. 771, it will be observed that our statute is much broader and more comprehensive. However, the facts of this case do not make it necessary to determine whether or not, in the absence of some element of estoppel, one who purchases a warehouse receipt from a thief, for value and without notice, acquires title as against the true owner. It is conceded that Flexner endorsed the receipts in blank so that they might be used for purposes of hypothecation or sale, and placed them in his vault. Wolf not only had access to the vault, but Flexner says that he directed Wolf to cancel four of the receipts. Instead of doing this, Wolf first pledged the certificates for his own debt and afterwards negotiated their sale to Meyer. Hence the case is one where the true owner put it in the power of his agent to impose upon a third party, and he will not be permitted to insist on his title as against such party if the latter was a purchaser

for value and without notice. Gardner v. Commercial Security Co., 184 Ky. 164, 211 S. W. 405; Arendale v. Morgan, 5 Snead 703.

The only other question to be determined is whether Meyer was a *bona fide* purchaser for value. Appellants insist that Meyer had notice of such facts that his action in purchasing the receipts amounted to bad faith. In support of this position it is argued that his agent knew that Wolf was Flexner's bookkeeper, that the receipts ran in the name of Flexner, and that Wolf was disposing of the receipts at very much less than their value, and that, in view of these facts, Meyer should have made inquiry of Flexner before purchasing the receipts. We have held that the purchase of a note for one-third of its face value was insufficient to show that the buyer was not a *bona fide* purchaser. Ham v. Merritt, 150 Ky. 11, 149 S. W. 1131. We have also held that the fact that a seller of warehouse receipts for whiskey represented that he was asking less than the whiskey cost, in order to meet his obligations and sustain his credit, was not sufficient to put the purchaser on inquiry, or to charge him with notice that the whiskey had been procured by fraud or had not been paid for. Theis v. Canmann, 59 S. W. 1093, 22 Ky. L. Rep. 1097. Here, Meyer did go to Flexner's place of business for the purpose of inquiring about the receipts. He did not go there solely for the purpose of seeing Wolf, but to inquire of anyone whom he might find in charge. The only person there was Wolf, who then enjoyed Flexner's confidence and had apparent authority to represent Flexner. Wolf assured him that the receipts were all right and exhibited the receipt books showing that they had been regularly issued. Not only so, but the receipts were at a bank of high standing. Its vice president participated in the negotiation and completion of the sale. These circumstances were all calculated to allay any suspicion that Meyer might have had as to the good faith of the transaction, and we are not inclined to hold that Meyer acted in bad faith in not delaying the purchase until he could inquire of Flexner, who was rarely ever in Louisville. We therefore conclude that Meyer was an innocent purchaser for value without notice.

Judgment affirmed.