# T. M. Crutcher Dental Depot, Inc., v. American Indemnity Co., Inc.

## (Decided June 8, 1937.)

CARL K. HELMAN for appellant.
CHARLES W. MORRIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

On January 28, 1933, the appellee issued to appellant an insurance policy known as a "non-ownership automobile Liability Automatic Coverage" policy. It appears that the purpose of the policy was to protect the insured, appellant, against loss arising out of the operation of automobiles owned by its salesmen and used by them in appellant's business. The policy provided, among other things, that an indorsemet was to be attached to it, naming the salesman using the car and the kind of automobile he owned. That clause of the policy out of which this controversy arises, reads as follows:

"In consideration of the premium herein provided, it is hereby agreed between the Named As-

sured and the Company that this policy covers the legal liability of the Named Assured (and of the Named Assured only) for bodily injuries and property damage, as provided in the policy, arising out of accidents resulting from the use of any automobile and/or motorcycle, of the private passenger type, in the business of the Named Assured except any automobile or motorcycle which at the time of the accident is:

"(1) Owned in whole or in part by the Named Assured or by the individual partners thereof, if the Named Assured is a co-partnership.

"(2) Hired or leased by the Named Assured.

"(3) Registered in the name of the Assured."

When the policy was issued an indorsement was attached thereto naming S. L. Lewis as salesman and owner of a Chevrolet car being used by him in appellant's business. On April 22, 1933, a second indorsement was added to the policy eliminating the name of S. L. Lewis and substituting W. L. Millsaps as salesman and owner of the car. However, it is stipulated in the record that, at the time the policy was issued and at the time the special indorsement was filed or attached thereto, the Chevrolet automobile described as belonging to S. L. Lewis was in fact owned by appellant and registered in its name in the state of Tennessee. It is claimed by appellant and, for the purpose of this case, treated as true, that when Millsaps succeeded Lewis as salesman for appellant he agreed to purchase of appellant the Chevrolet car, but he never signed any written agreement to buy the car and no bill of sale was executed to him by appellant until after he (Millsaps) had traded the car for a new one. Appellant had a branch office or place of business in Nashville, Tenn., and it appears that Millsaps was assigned to that territory, and on May 6, 1933, he (Millsaps) traded the Chevrolet car for a new one, and it is stipulated that the new car was, like the old one, registered in the state of Tennessee, in the name of T. M. Crutcher Dental Depot. Millsaps purchased the new car of the Reed Motor Company of Nashville, Tenn., and the terms of the sale were agreed upon, but the new car was not ready at the time, but later the Reed Motor Company, or some of its employees, called Millsaps and

told him the car was ready and he went to the garage and received the new car, which was registered in the name of appellant, "T. M. Crutcher Dental Depot." Millsaps claims that he did not authorize the motor company to register the car in the name of T. M. Crutcher Dental Depot and that it was so registered by the employees of the motor company, the seller of the car, without the knowledge or consent of him or his employer, the appellant. Appellant's agent and manager of its branch house in Nashville knew of the transfer of the car, that is, that Millsaps had traded the old car for a new one, and he so informed appellant by telephone, and on the following day, May 7, 1933, appellant executed a bill of sale to Millsaps covering the old car, but Millsaps never signed any agreement to purchase the car or made any payments thereon, and continued to use the new car registered in the name of appellant.

On May 26, 1933, while driving the new car, Millsaps was involved in an automobile accident resulting in the injury of several persons. Appellant notified appellee of the accident but appellee refused to defend the action or otherwise negotiate for a settlement of the claims. Appellant settled the claims for the injuries resulting from the accident for the sum of $800, plus other expenses, including attorney's fees, etc., aggregating the sum of $1,236.10, and filed this action against appellee to recover that sum under the policy. Appellee defended upon the ground that the policy did not cover the car Millsaps was driving which was involved in the accident, because it was registered in the name of appellant, contrary to the provisions of the policy.

The issues were made, the case came on for trial and a jury was impaneled, and counsel for appellant stated to the jury the history and facts of the case, in substance as we have indicated, which were supplemented by the following stipulation:

"It was thereupon stipulated between parties hereto that the car known in the record, and referred to as the Lewis car, on which the special indorsement was filed with the Company, was registered in the State of Tennessee in the name of T. M. Crutcher Dental Depot; that the car then referred to as the Lewis car was then traded in for a new car, and the new car was then registered in the State of Tennessee in the name of T. M.

Crutcher Dental Depot; and at the time of the accident referred to, was registered in the State of Tennessee in the name of T. M. Crutcher Dental Depot.

"It is further stipulated that it is contended by the plaintiff that the Jim Reed Chevrolet Company procured the registration of the car involved in this controversy in the name of the T. M. Crutcher Dental Depot without having been directed to do so by any person in authority connected with or authorized to act for the T. M. Crutcher Dental Depot, and with the knowledge or consent of the T. M. Crutcher Dental Depot.

"It is further stipulated that the car which was traded in for the Chevrolet automobile involved in the accident, 'that is the Lewis car', was owned by the T. M. Crutcher Dental Depot at the time the said Millsaps was employed by the T. M. Crutcher Dental Depot; but that it was agreed between T. M. Crutcher Dental Depot and Millsaps that Millsaps was to purchase the Lewis car, as set out in opening statement of counsel for plaintiff.

"It is further stipulated that at the time the Lewis car was traded in on the second car, no bill-of-sale had been executed but that on May 7th, 1933, the T. M. Crutcher Dental Depot executed a bill-of-sale to Millsaps, covering the Lewis car; but that Millsaps never signed any agreement to purchase said automobile or made any payment thereon."

Thereupon the court peremptorily instructed the jury to find a verdict for the defendant. This appeal follows.

It will be seen that the question to be determined is one of law, namely, whether appellee is liable under the terms of the policy because of the fact that the car involved in the accident was registered in the name of appellant without its knowledge or consent, which were brought about under the facts and circumstances as we have indicated and as stipulated.

Appellant cites and relies upon the case of Life & Casualty Company v. Metcalf, 240 Ky. 628, 42 S. W. (2d) 909. It appears that the rules of construction of

the insurance policy involved in that case relate to ambiguities appearing in the policy. The rule enunciated in the case supra, is, that phrases or words of ambiguous, doubtful, or equivocal meaning appearing in the policy are to be construed in the insured's favor. The soundness of that rule is too well established to be doubted, but we do not think the policy in question comes within that rule. There is nothing ambiguous or doubtful in the language used. It is stated in plain and concise language that the policy does not insure against automobiles owned, hired, leased, or registered in the name of assured at the time of the accident. It appears that the understanding between Millsaps and appellant was that Millsaps was to purchase the car of appellant and pay it therefor the price which he may be able to obtain on it when traded for a new one. Such agreement of purchase and sale did not in reality amount to a sale of the car and it cannot be disputed that the title to the old car referred to in the stipulation as the "Lewis car" was in appellant at the time Millsaps traded it for a new car which was also registered in the name of appellant. Under the record before us it must be treated as true that appellant did not authorize the new car to be registered in its name and that it was so registered without appellant's knowledge or consent. But on the other hand, it must not be overlooked that appellee, the insurer, was not responsible for the new car being registered in the name of appellant, and that such registration resulted from and was brought about by the conduct of appellant in permitting its salesman, Millsaps, to use the "Lewis car," while registered in its name, and owned by it, all of which was contrary to the provisions of the policy.

It is the well-settled rule that between two innocent persons he must bear the loss who made the loss possible. In Bailey v. Hoover, 233 Ky. 681, 26 S. W. (2d) 522, Bailey purchased a Pontiac car from one Sharp, giving him a sum of money and a Ford automobile. To transfer the Ford car, Bailey signed a blank bill of sale. Bailey left his Pontiac car with Sharp, who proceeded to resell it to Hoover, using the blank bill of sale for that purpose. Bailey sought to recover the Pontiac from Hoover. This court, in commenting on the rights of the parties, used the following language:.

"The mischief here was wrought by Sharp. Neither Bailey nor Hoover had done any wrong, but there is no principle better than this: That where one of two innocent parties must sustain a loss because of the nefarious act of another, the loss must fall on the one who put it in the power of the third party to cause the loss. Brown's Adm'r v. Wilson, 222 Ky. 454, 1 S. W. (2d) 767; Meder v. Silver, 225 Ky. 733, 9 S. W. (2d) 1089; Citizens Bank v. Mutual T. & D. Co., 206 Ky. 86, 266 S. W. 875, 40 A. L. R. 1001; Flexner v. Meyer's Ex'x, 191 Ky. 133, 229 S. W. 99; 12 R. C. L. p. 401, sec. 149; 21 R. C. L. p. 907, sec. 84, p. 908, sec. 91; 21 C. J. p. 1170, sec. 176. By signing and delivering to Sharp these transfers in blank Bailey put it in the power of Sharp to do this wrong, and he must bear the resulting loss."

The case, supra, is peculiarly applicable to the case at bar. Appellant, by procuring insurance on the "Lewis car," owned by it and registered in its name in violation of the terms of the policy, made possible the registration in its name of the new car for which the "Lewis car" was traded. There is no contention that the employees of the Reed Motor Company who registered the new car in the name of appellant did not act in good faith, and evidently so registered it because the old or "Lewis car" was registered in appellant's name. As said in the Bailey-Hoover Case, supra, neither appellant nor appellee did any intentional wrong, but, as we have stated, the registration of the new car in the name of appellant was made possible and brought about by appellant's own conduct and that of its agent, Millsaps, and consequently it must bear the loss. The further argument for appellant is that technicalities will not void an insurance policy. We cannot agree that the question here involved is a technicality. It is a question of contract expressed in plain concise terms, and could not have been misunderstood by the contracting parties. In Prange v. International Life Insurance Company, 329 Mo. 651, 46 S. W. (2d) 523, 526, 80 A. L. R. 957, it is said:

"Courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties; they discharge

their full duty when they ascertain and give effect to the intentions of the parties, as disclosed by the contract which they have themselves made. Interstate Business Men's Acc. Ass'n v. Nichols, 143 Ark. 369, 220 S. W. 477; State ex rel. v. Cox, 322 Mo. 38, 14 S. W. (2d) 600; State ex rel. v. Trimble, 306 Mo. 295, 267 S. W. 876; State ex rel. v. Trimble, 297 Mo. 659, 249 S. W. 902; Winters v. Insurance Company, 221 Mo. App. 519, 290 S. W. 109.''

See, also, Williams v. Union Central Life Insurance Company, 291 U. S. 170, 54 S. Ct. 348, 78 L. Ed. 711, 92 A. L. R. 693; Equitable Life Assurance Society of United States v. Adams, 259 Ky. 726, 83 S. W. (2d) 461; Fidelity & Casualty Company v. Palmer Hotel Company, 179 Ky. 518, 200 S. W. 923, L. R. A. 1918C, 808; North American Accident Insurance Company v. White, 258 Ky. 513, 80 S. W. (2d) 577.

Appellant also relies upon the case of Colker v. Connecticut Fire Insurance Company, 218 Ky. 124, 290 S. W. 1073. In that case the policy had in it a provision voiding it by increased fire hazard and the property insured was to be used as a chewing gum factory only. It was shown that the tenant, without the knowledge of the owner, erected a still on the premises and the insurance company interposed, as a defense to its liability, that the fire hazard was increased by the erection of the still on the premises and sought to escape liability under the policy. It was held that the maintenance of the still without the knowledge of the insured did not release the insurer from the provisions voiding the policy, even though the fire hazard had been increased. But it will be observed that in that case, supra, the provision imposed against increase of fire hazard was a condition subsequent and after the insurance had attached and become effective before the condition was violated. In the case at bar the provision of the policy, to the effect that it did not cover or insure against automobiles registered in the name of the assured, was a condition precedent, and it is obvious, under the stipulated facts, that this condition was never complied with by appellant and in fact violated from the beginning of the transaction and the insurance had not attached to any automobile, either the ''Lewis car'' or the new one which was involved in the accident, both of which were registered in the name of the appellant.

184

In the Colker Case, supra, had Colker known that the still was operated on the premises insured, and had misrepresented the facts to or concealed them from the insurer, it would have become a condition precedent and the insurance would not have attached, and that case would have been brought within the category of the case at bar.

Appellant further cites certain other cases which deal with conditions subsequent to the attaching of the insurance, or other facts or provisions in the policies involved, dissimilar to the facts or policy involved in the present case.

Judgment affirmed.