STITZEL–WELLER DISTILLERY, Inc., v. NORMAN et al.

SAME v. HARTMAN et al.

Nos. 54, 58.

District Court, W. D. Kentucky, Louisville Division.

June 6, 1941.

A. C. VanWinkle, of Louisville, Ky., for plaintiff.

Allen P. Dodd, of Louisville, Ky., for Collins & Newman Co.

Doolan, Helm, Stites & Wood, of Louisville, Ky., for J. W. Norman and F. H. Hartman, Inc.

Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, for R. L. Buse Co. and Arthur M. O'Connell.

Sam Manly, III, of Louisville, Ky., for Kentucky Distillers Receipts Corporation.

MILLER, District Judge.

The plaintiff Stitzel-Weller Distillery filed these two interpleader actions against the respective defendants to have determined in each case who was the legal owner of warehouse receipts issued by it covering whiskey stored in its bonded warehouse. Action No. 54 involved warehouse receipts issued by the plaintiff and owned by the defendant J. W. Norman. Action No. 58 involved warehouse receipts issued by the plaintiff and owned by the defendant F. H. Hartman, Inc. Inasmuch as the facts giving rise to the controversy in each case are similar and to some extent the same, and involve the same question of law, the cases were heard together and will be disposed of in this joint opinion.

Jurisdiction is acquired in each case under Section 41, subsection 26, 28 U.S.C.A., as amended by Act of January 20, 1936,

In the Norman case, the defendant J. W. Norman, a resident of Ohio, purchased in the year 1936 from the Penfield Company warehouse receipts issued by the plaintiff covering 59 barrels of whiskey produced in the calendar year 1936 and stored in the plaintiff's bonded warehouse. On or about June 22, 1938, Norman sold the receipts to the defendant E. Mugge Company, a Florida corporation with its principal office at Tampa, Florida. The deal was negotiated and handled by Alvin F. Fisher who took delivery of the receipts and who gave to Norman in payment for the same a trade acceptance of E. Mugge Company drawn on the defendant Wauchula State Bank of Wauchula, Florida. On June 23, 1938, Fisher sold to the defendant Collins and Newman Company, a Kentucky corporation with its principal place of business in Louisville, Kentucky, receipts covering 74 barrels of Stitzel-Weller whiskey including the 59 barrels originally owned by Norman. Collins and Newman Company immediately resold the receipts to the defendant R. L. Buse Company, an Ohio corporation with its principal place of business in Cincinnati, Ohio; both Collins and Newman Company and R. L. Buse Company are dealers in whiskey warehouse receipts. R. L. Buse Company thereafter sold receipts covering 25 barrels of this whiskey to the intervening defendant Arthur M. O'Connell.

In the Hartman case the defendant F. H. Hartman Inc., an Ohio corporation with its principal place of business in

Toledo, Ohio, purchased during the year 1936 through the Toledo office of the Penfield Company warehouse receipts of the Stitzel-Weller Distillery covering 350 barrels of whiskey produced in the calendar year 1936 and stored in the plaintiff's bonded warehouse. On or about May 23, 1938, the Hartman Company sold to the defendant E. Mugge Company receipts covering 200 barrels of this whiskey. The deal was handled for E. Mugge Company by Fisher, the same man who handled the Norman transaction, and who took delivery of the receipts and gave to the Hartman Company in payment therefor the trade acceptance of the defendant E. Mugge Company drawn on the defendant Wauchula State Bank. On May 24, 1938, Fisher was in Louisville and sold to the defendant Collins and Newman the receipts covering 200 barrels of whiskey referred to. He represented this whiskey as belonging to him personally. At the same time he offered to sell receipts covering 150 barrels of Stitzel-Weller whiskey to Collins and Newman which he represented as belonging to the defendant E. Mugge Company. Collins and Newman purchased both lots. Fisher cashed the check for the whiskey purchased from him and the other check for the whiskey purchased by E. Mugge Company was forwarded to that company and later cashed by it. The purchase from Fisher individually was run through the books of Collins and Newman in the account of E. Mugge Company. The invoice that accompanied the purchase from Fisher was invoiced to him care of E. Mugge Company. On May 25, 1938, Collins and Newman Company sold the receipts covering 200 barrels to the defendant R. L. Buse Company, and the receipts covering 150 barrels to the defendant Kentucky Distillers Receipts Corporation, acting through Williams, a broker in whiskey warehouse receipts. The defendant the Kentucky Distillers Receipts Corporation thereafter sold to the defendant Griggs-Cooper and Company, a corporation with its principal place of business in St. Paul, Minnesota, certificates covering 100 barrels of the whiskey purchased by it.

The trade acceptances of the defendant E. Mugge Company given by Fisher to both Norman and the Hartman Company in payment of the warehouse receipts so purchased were not paid at maturity. E. Mugge Company was adjudicated a bankrupt and the defendant Frank E. Cooper

was appointed its Trustee in Bankruptcy. Both Norman and the Hartman Company repudiated the sales of their respective receipts to E. Mugge Company claiming that they were procured through the fraudulent representations of Fisher, E. Mugge Company, Wauchula State Bank and the defendant J. W. Crews of Wauchula, Florida, the President of the Wauchula State Bank. They have filed in their respective suits cross-claims against their co-defendants, J. W. Crews, Wauchula State Bank, Frank E. Cooper, Trustee of E. Mugge Company, Collins and Newman Company, G. C. Collins, Jr., L. J. Newman, R. L. Buse Company, Kentucky Distillers Receipts Corporation and Griggs-Cooper and Company, alleging a fraudulent conspiracy on the part of co-defendants to defraud them of their receipts. By said cross-claims they ask for judgment for the value of said receipts in the event that it is legally impossible that the receipts be returned to them.

The facts in the case are for the most part undisputed. At the trial considerable evidence was introduced on behalf of Norman and the Hartman Company pertaining to the fraudulent methods used in persuading them to sell and deliver their receipts to Fisher. This evidence showed that E. Mugge Company was incorporated in 1934 and engaged in the rectifying business in Tampa, Florida, with a very small-sized plant. It became financially involved in 1936 at which time it borrowed heavily in comparison to its resources from the defendant Wauchula State Bank, and by reason of this existing debtor-creditor relationship the Wauchula State Bank and the defendant J. W. Crews, its president, virtually controlled the activities of E. Mugge Company. Crews conceived the scheme of purchasing warehouse receipts and had Fisher appointed business manager and purchasing agent for E. Mugge Company. Fisher's past reputation was bad, but he was supplied with credentials and testimonial letters which enabled him to represent himself as an important and financially responsible personage, which position he falsely assumed. He was also supplied with trade acceptances of E. Mugge Company signed in blank which he used in payment for the receipts purchased. He directed inquiries as to himself and E. Mugge Company to the Wauchula State Bank which inquiries were satisfactorily answered by the defend-

186

ant Crews. Fisher represented to his customers that E. Mugge Company was financially strong with an expanding business which was a material misrepresentation of fact. Without further details being enumerated it is sufficient to say that the evidence proved unquestionably that the transactions with both Norman and the Hartman Company were fraudulent and that Fisher secured title to and possession of the warehouse receipts so purchased by fraudulent means. These transactions were accordingly voidable between the contracting parties. This leaves for consideration the claims of Norman and Hartman Company against subsequent purchasers of the receipts from Fisher or E. Mugge Company or their vendees, and also their claims for damages in tort against the defendants in the event the receipts themselves can not be recovered.

It appears well settled that the warehouse receipts in question have such a quality of negotiability as will protect a holder who has acquired them by purchase in good faith without knowledge of any defects in the title of his vendor. Kentucky Statutes, Section 4770; Theis v. Canmann & Co., 59 S.W. 1093, 22 Ky.Law Rep. 1097; Flexner v. Meyer's Executor, 191 Ky. 133, 229 S.W. 99. With respect to the purchasers from Collins and Newman Company in both cases, namely,—R. L. Buse Company, Kentucky Distillers Receipts Corporation, Arthur M. O'Connell and Griggs-Cooper and Company, the evidence completely failed to connect them in any way with the alleged fraudulent transactions or to attribute to them any knowledge or notice of the alleged defective title acquired by E. Mugge Company and subsequently purchased by Collins and Newman Company. The Court finds that each of said purchasers was a purchaser for value without notice and that the title acquired in each instance is good as against the claims of J. W. Norman and F. H. Hartman, Inc. Accordingly, Norman and the Hartman Company have no valid claim to the receipts transferred by them to Fisher and now held by these claimants, irrespective of the conditions under which Collins and Newman Company acquired them from Fisher.

Norman and F. H. Hartman, Inc. attack the title acquired by Collins and Newman Company on the ground that the warehouse receipts were not purchased in good faith, and contend that the subsequent resale of them is a conversion for which Collins and Newman Company is liable in tort, even though title has been lost to the receipts themselves. In support of this contention they list the following circumstances as refuting the claim of Collins and Newman Company that the receipts were purchased in good faith:

1. Unseemly haste in reselling the warehouse receipts within 24 hours at a price still below the market, even though above the price at which the receipts were purchased.

2. Purchase of the receipts at prices far below their real market value.

3. Failure to require Fisher's endorsement upon the receipts together with failure to make any inquiry concerning his title.

4. Contradiction in the Collins and Newman testimony and exhibits.

Most of these objections fail to give full consideration to the actual circumstances under which the purchases and resales were made. Collins and Newman Company were engaged in buying and selling whiskey warehouse receipts. They were not buying them for investment purposes. A quick turnover is the chief characteristic of such a business. Such dealers keep in touch with the price at which this type of property can be moved, and purchases are made when the opportunity presents itself, at a price somewhat lower, with the expectation of immediately reselling it at a profit. If the property is held a month, or even a week or a few days, conditions might materially change and the transaction be turned into a loss instead of a profit. Accordingly, the short time between the purchase of the receipts by Collins and Newman and the re-sale to others was in accordance with their usual course of business. The receipts were endorsed by the parties to whom they were issued and these endorsements had been guaranteed by reliable financial institutions. Fisher's endorsement was unnecessary either for the purpose of passing title or as a matter of financial responsibility. Other purchasers in the exercise of business judgment might have required his endorsement as a routine matter, but inasmuch as the facts were well-known and the course of the receipts through Fisher and Collins and Newman Company could be thereafter traced without any difficulty, I fail to see anything suspicious in Collins and Newman waiving

Fisher's endorsement. Likewise, I fail to attach much importance to the apparent contradictions or inconsistencies in the Collins and Newman testimony, or in the manner in which the bookkeeping transactions were handled. Details about individual transactions which are included in numerous others often become confused or uncertain with the lapse of time. Testimony in this case was given more than a year and one-half after the transactions occurred. The inconsistencies pointed out do not change in any material way the essential facts which control the situation. The bookkeeping transactions were likewise incidental matters that can be easily explained on the one hand or greatly magnified upon the other, depending upon the interest on the part of the one making the evaluation.

The prices at which Norman and the Hartman Company sold their receipts to Fisher, namely, $1.30 through $1.50 per gallon do not have any material bearing upon the issue involved. The evidence shows rather strongly that this was well above the market price of ninety cents to one dollar a gallon, plus charges and taxes, and was of course one of the inducements held out by Fisher in order to procure the sale. The market suffered a stiff decline beginning in March, 1938, dropping as low as seventy to seventy-five cents a gallon in May of that year. It was anticipated that the market would go even lower and in fact did drop to from sixty-five to seventy cents a gallon in the fall of 1938. Collins and Newman Company purchased the whiskey at approximately fifty cents a gallon; the 200 barrels of the Hartman whiskey was sold at fifty-three cents a gallon and 150 barrels sold at fifty-six cents a gallon less brokerage. The Norman whiskey was resold at about 52½ cents a gallon. These transactions were materially below the market, but in view of a steadily declining market with uncertainty as to how far it would decline or how long it would be before the receipts could be resold prices are not so much out of line as to classify them as fraudulent or made in bad faith. It is well settled as a matter of law that inadequacy of the purchase price is not such a fact as will prevent the purchaser from being considered a purchaser in good faith. Theis v. Canmann & Co., supra; Ham v. Merritt, 150 Ky. 11, 149 S.W. 1131; Pratt v. Rounds, 160 Ky. 358, 169 S.W. 848, 850; Flexner v. Meyer's Executor, supra. In Ham v. Merritt a $300 note was purchased for $100, and in Pratt v. Rounds the security was purchased at a discount of 25%. In both of these cases the Court of Appeals held that the purchaser was nevertheless a purchaser in good faith and not charged with any notice of a defective title of his vendor. The various circumstances relied upon by Norman and the Hartman Company are probably enough to raise suspicions, but it has been several times decided by the Kentucky Court of Appeals that "the rights of a purchaser of negotiable paper are not to be defeated upon suspicion. To defeat him under the statute, the facts known to him must be such that his action in taking the instrument amounted to bad faith, unless he has actual knowledge of the infirmity or defect." Pratt v. Rounds, supra; Montenegro-Riehm Music Co. v. Illinois Trust & Savings Bank, 164 Ky. 608, 176 S.W. 32; Gardner, Jr. v. Commercial Security Company, 184 Ky. 164, 211 S.W. 405. Accordingly, I am of the opinion that Collins and Newman Company is to be considered as a purchaser in good faith of the receipts in question, and is not liable in tort to either Norman or the Hartman Company for the value of the receipts so purchased and resold.

The cross-defendants, R. L. Buse Company, Frank E. Cooper, Trustee in Bankruptcy for E. Mugge Company, Wauchula State Bank and J. W. Crews, were served with process under the cross-claims of Norman and Hartman Company, directed to the United States Marshals in Ohio and Florida. R. L. Buse Company has filed objections to the jurisdiction over it under the cross-bill, and the other three cross-defendants have failed to answer and have not entered an appearance. Except where specifically authorized by a Federal statute, the civil process of a Federal District Court does not run outside the district and service outside the district is void. Toland v. Sprague, 12 Pet. 300, 9 L.Ed. 1093; Munter v. Weil Corset Company, 261 U.S. 276, 43 S.Ct. 347, 67 L.Ed. 652; Robertson v. Railroad Labor Board, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119; Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 57 S.Ct. 273, 81 L.Ed. 289. Norman and the Hartman Company claim that jurisdiction is acquired by virtue of the pro-

visions of Section 41(26), 28 U.S.C.A. which authorized the present interpleader proceeding. That statute does provide that the Court in which the interpleader suit is filed shall have power to issue its process against all claimants and to issue an order of injunction against each of them, enjoining them from prosecuting any proceeding in any other court with respect to the money or property involved, which process and order of injunction shall be addressed to and served by the United States marshall "for the respective districts wherein said claimants reside or may be found." This statute confers jurisdiction over all the defendants served, even those residing in Ohio and Florida, with respect to their claims against the warehouse receipts. It does not confer jurisdiction over defendants in another state against whom a personal judgment is sought by a cross-bill filed by a codefendant. Such a proceeding is not an interpleader proceeding, and in such a proceeding the cross-defendants are not "claimants" as provided by the statute, but they are defendants in an action in personam. Although it might be desirable to dispose of all related claims in the one action and cross-defendants could accomplish this result by entering their appearance, yet the right to raise the jurisdictional question plainly exists if they prefer to have such question of personal liability disposed of in a separate proceeding. Although the Court has jurisdiction in the 'interpleader proceeding and the venue in that phase of the controversy is proper under Section 41(26), 28 U.S.C.A., yet the venue of the cause of action asserted by the cross-bill would not be proper if the cross-bill is treated as an independent proceeding. Section 51 of the Judicial Code; 28 U.S.C.A. § 112; Richard v. Franklin County Distilling Co., D.C.W.D.Ky., 38 F.Supp. 513, decided April 16, 1941, and cases therein cited. Although the question of venue may be waived by such cross defendants as have failed to answer or to object (Commercial Casualty Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 49 S.Ct. 98, 73 L.Ed. 252), yet it is also necessary that the Court acquire jurisdiction over the person of the defendant before the claim for personal judgment can be adjudicated. See Employers Reinsurance Corp. v. Bryant, supra. The cross defendants in Ohio and Florida are accordingly not before the court. Such defendants as are before the Court under the cross-bills were not, in my opinion, the perpetrators of the fraud complained of, nor connected with it in such a way as to impose any personal liability upon them under the respective cross-claims of Norman and the Hartman Company. Accordingly, the cross-claims are dismissed.

 The attorneys for the plaintiffs asked for an allowance for their costs herein and for an attorney's fee in prosecuting these actions. Such an allowance, payable out of the funds deposited in court, is authorized under the statute. Mutual Life Insurance Company of New York v. Bondurant, 6 Cir., 27 F.2d 464; Massachusetts Mutual Life Insurance Company v. Morris, 9 Cir., 61 F.2d 104; Treinies v. Sunshine Mining Company, 9 Cir., 99 F.2d 651, affirmed 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85, rehearing denied 309 U.S. 693, 60 S.Ct. 464, 84 L.Ed. 1034; Hunter v. Federal Life Insurance Company, 8 Cir., 111 F.2d 551. In the present case no funds were deposited in court by the plaintiff, but the plaintiff gave bond in lieu thereof as authorized by the statute. The whiskey represented by the warehouse receipts is for all practical purposes the property or sum in controversy and the attorneys for the plaintiffs are entitled to a lien against this whiskey to secure the payment of such an allowance as against the claims to said whiskey on the part of all parties to this action. Such a lien will not prevail over any subsequent vendee who may have purchased the certificates without notice of this litigation. The amount of fee requested is not shown by the record and the Court will confer with counsel for the interested parties for the purpose of determining the amount of the allowance and the manner in which it should be paid.

Counsel will prepare and submit for entry findings of fact and conclusions of law, together with a final judgment, in accordance with the foregoing memorandum.