## HAGAN v. CENTRAL AVENUE DAIRY, Inc.
### No. 12211.

United States Court of Appeals
Ninth Circuit.

Jan. 4, 1950.

Rehearing Denied Feb. 7, 1950.

Everet L. Hagan, in pro. per.

Harry C. Hedberg, Los Angeles, Cal., for appellant.

Bodkin, Breslin & Luddy, Los Angeles, Cal., for appellee.

Before GOODRICH, and POPE, Circuit Judge, and HALL, District Judge.

GOODRICH, Circuit Judge.

This case raises the question of the scope of jurisdiction of the United States District Court in an interpleader action.

The Title Insurance and Trust Company was the escrow holder of the sum of $1,750 deposited by Evert L. Hagan on an agreement between himself and Central Avenue Dairy, Inc., an Arizona corporation. Alleging that both Hagan and the Dairy company had made adverse claims against it for the $1,750, the Title Insurance and Trust Company brought in the United States District Court for the Southern District of California an action of interpleader as provided in the federal statutes,

28 U.S.C.A. §§ 1335, 1397, 2361, joining the two claimants as defendants in this suit. Service was made upon the Dairy company in Arizona.[1] It filed no answer and made no appearance in the interpleader suit. The District Court awarded the sum to Hagan. Hagan, in the meantime, had filed a cross-claim against Central Dairy asking for money damages and alleging that the claim for them grew out of the same contract which was the subject-matter of the escrow deposit. Central Dairy appeared specially and objected to the assertion of the court's jurisdiction over it with regard to this cross-claim. The trial court dismissed the cross-claim and Hagan appeals.

■ The interesting question raised by the appeal is whether the court, which undoubtedly had jurisdiction of the interpleader action under the very terms of the statute, was correct in limiting itself to the disposal of the fund involved in the interpleader suit. Hagan urges that it is a well settled principle of equity that "Equity delights to do justice and that not by halves."[2] He also presses upon us Rule 13(g) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides that "A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counter-claim therein or relating to any property that is the subject matter of the original action. * * *" Both contentions are plausible. But equity can only do complete justice if it has before it both the party for whom

justice is to be done and against whom justice is to be required. Again, the Federal Rule quoted is, we think, one for the conduct of actions, not to provide a substantive rule governing the extent of the jurisdiction of a court. There is no use in talking about how an action is to be conducted unless a court has jurisdiction of the person and competency as to the subject-matter.

■ We think the District Court of California did not have personal jurisdiction over the absent non-consenting Arizona corporation except to the extent of that corporation's interest in the escrow fund. That the court had jurisdiction that far is clear from the statute. Furthermore, if Congress had so provided, we think there is no reason why process from the United States District Court could not run country-wide. But Congress has not so provided, generally, and a District Court's power to hear and decide cases involving personal liability of an individual is limited to those served within the state where the court sits.[3] The absentee defendant was not personally before the court here. The court could adjudicate rights in the fund, but could affect no other interest of the absentee.

It would be a startling conclusion, we think, to give to Rule 13(g) and the Interpleader statute the effect of enlarging the jurisdiction of a court to create rights going beyond those to the fund which is the subject of the interpleader action. Such a construction would go far beyond the situation which called for the Interpleader statute in the first place.[4] Situations of considerable hardship could re-

1. Nation-wide service is provided for in interpleader by 28 U.S.C.A. § 2361.
2. 30 C.J.S., Equity, § 104, page 506.
3. Rule 4(f), Fed. Rules Civ.Proc., is the most recent articulation of .; long-standing congressional mandate that process of the federal courts shall be territorially restricted. It provides that "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. * * *" Before the adoption of Rule 4(f), process could

issue only within the district in which the court sat. See Mississippi Publishing Co. v. Murphree, 1946, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185; Munter v. Weil Corset Co., 1923, 261 U.S. 276, 43 S.Ct. 347, 67 L.Ed. 652; Toland v. Sprague, 1838, 12 Pet. 300, 9 L.Ed. 1093.

4. The first federal interpleader statute, providing for nationwide process, came after the decision of New York Life Insurance Co. v. Dunlevy, 1916, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140, which held that the Constitution precluded adjudication by a state court of the rights of a non-resident claimant who had not

504

sult. In this case, for instance, suppose Central Dairy to be a Delaware corporation not engaged in business in California. Is it to be held subject to personal liability in the District Court for California because an interpleader plaintiff says it claims an interest in an escrow fund? That would indeed be going pretty far, and we cannot think that any such result was intended by Congress when it passed the Interpleader statute or the Supreme Court when it promulgated the Federal Rules of Civil Procedure.

The attachment process furnishes a useful analogy here. Attachment is available against a non-resident, absentee defendant if he has goods or rights which are subject to seizure in the state where suit is brought. The judgment against the absentee, assuming due process has been followed, deprives him of his rights in the thing seized. But the adjudication cannot, for want of jurisdiction, create further personal liability against him nor does it act generally as res judicata upon the questions answered in awarding the seized property to the plaintiff.[5] Attachment is often classified as an action quasi in rem, and the description does no harm so long as it is recognized as a name given to a type of legal proceeding, not an explanation of a result.

Such authority as there is upon the precise point so holds with regard to interpleader. Stitzel-Weller Distillery, Inc. v. Norman, D.C.1941, 39 F.Supp. 182; Eschger, Ghesquirer & Co. v. Morrison, Kekewich & Co., 6 T.L.R. 145 (C.A.1890).[6]

The judgment is affirmed.

HALL, District Judge.

I concur in the result.

The record in this case presents a very narrow question for decision on appeal.

The original interpleader required judicial determination only as to whether Hagan or Central Avenue Dairy was entitled to the sum of $1,750.00 deposited with the Title Company in escrow. The only terms of the escrow instructions disclosed in the record concerning $1,750.00 were that it was to be disbursed upon instructions "from both Evert Hagan and Central Avenue Dairy, Inc., or from a court of competent jurisdiction." The other terms of the escrow were all alleged to have been complied with. But such instructions for the disbursement of the $1,750.00 were not received by the escrow holder, although both Hagan and the Central Dairy had laid claim to it by demands upon the escrow holder. After the original interpleader suit was filed, and process therein issued and served upon both Hagan and Central Dairy, Hagan came into Court and claimed the $1,750.00. Central Dairy did not. It defaulted. On that record, the money was ordered paid to Hagan. There was nothing that called for judicial determination as to whether or not the Central Dairy was entitled to $1,750.00, or any of it.

Thus, the only question for determination on this appeal was whether or not Hagan could file a cross-claim against the defaulting non-resident Central Dairy on matters which were not before the court concerning the $1,750.00: there was no issue before the District Court concerning any benefits or obligations[1] arising out of the instrument providing for the payment

been served. The purpose of the Federal Interpleader Act of 1917, 39 Stat. 929, was to provide relief for the vexed stakeholder, and there is no indication that Congress was also concerned with settling whatever other disputes might lie between the claimants in the second stage of the interpleader proceeding. The 1917 statute became by several legislative stages the present Judicial Code Sections 1335, 1397, 2361. See 3 Moore, Federal Practice 3014–3018 (2d ed. 1948).

5. Authorities are collected in Goodrich, Conflict of Laws § 71 (3d ed. 1949).

6. To be distinguished is Bank of Neosho v. Colcord, D.C.1949, 8 F.R.D. 621, in which the claimant against whom a cross-claim was asserted had already appeared to claim the fund deposited by the stakeholder. But the court in that case gave broader scope to Rule 13(g) than we think proper.

1. 28 U.S.C.A. § 1335 (a) (1).

of the money (the escrow instructions), nor any of the transactions or occurrences which gave rise to the escrow.[2] On such record it is clear that process issued by the District Court of Southern California could not obtain jurisdiction over the defaulting non-resident Central Dairy on the cross-claim of Hagan for a personal money judgment for damages. Any statements beyond that in the opinion as to the jurisdiction of the United States District Court under the Interpleader Statute, or the Federal Rules of Civil Procedure are not necessary to the decision, and can only give rise to confusion. The Interpleader Statute was expanded only comparatively recently (1936) to permit interpleader in the Federal Courts on other than benefits arising under various forms of insurance, and is now couched in very broad terms.

I am not prepared to say, and the record in this case does not call for determination of the question as to whether or not the District Court would have jurisdiction of such cross-claim had it been necessary to determine the rights, benefits or obligations of the parties under the escrow instructions in order to make a judicial determination as to whether or not the $1,750.00 should be awarded to Hagan. Nor does the record in this case call upon this court to say, the ingenuity of man being what it is and the Interpleader Statute and Federal Rules of Civil Procedure being as broad as they are, that a situation cannot arise in an interpleader action, or one in the nature of interpleader, where one of the defendant-claimants may or may not lawfully cross-claim therein against another defendant-claimant, or even a third party, concerning benefits or obligations arising out of the terms of the instrument which may be required to be construed in the interpleader suit, or out of the transactions or occurrences relating to such instrument, although such cross-claim as an independent action would fail because the court in which the suit was brought could not obtain personal jurisdiction over the non-resident defendant.

A determination as to whether the Interpleader Statutes and F.R.C.P. considered together would give jurisdiction to cross-claims arising in such suits in interpleader, or in the nature of interpleader, should be left until such occasion arises.[3]

---

**2.** Federal Rules of Civil Procedure, rules 22, 13(g), 28 U.S.C.A.

**3.** See "Broadening the Second Stage of Federal Interpleader," Chafee, 56 Harvard L.R. 929 (1943).